United States District Court
For the Northern District of California

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GILBERTO F. GUILLERMO and LILLIAN S.
CORTES,

        Plaintiffs,

  v.

CALIBER HOME LOANS, INC., and
JPMORGAN CHASE BANK,

        Defendants.

_____/

No. C 14-04212 JSW

**ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' MOTIONS TO
DISMISS AND SETTING CASE
MANAGEMENT CONFERENCE**

Now before the Court are the motions to dismiss filed by Defendants JPMorgan Chase
Bank, N.A. ("Chase") and Caliber Home Loans, Inc ("Caliber") (collectively, "Defendants").
The Court has considered the parties' papers and relevant legal authority, and hereby GRANTS
IN PART AND DENIES IN PART Defendants' motions to dismiss.

**BACKGROUND**

On December 7, 1999, Plaintiffs, Gilberto F. Guillermo ("Guillermo") and Lillian S.
Cortes ("Cortes") (collectively, "Plaintiffs"), purchased their home, located at 3635 Cesar
Chavez, San Francisco, California ("Property"). (First Amended Complaint ("FAC") ¶ 1.) On
November 27, 2007, Plaintiffs obtained a $509,000 mortgage loan from Washington Mutual
Bank, secured by a Deed of Trust encumbering the Property. (Chase Request for Judicial
Notice ("RJN"), Ex. 1; Caliber RJN, Ex. A.)[1] The beneficial interest in the Loan and Deed of

---

[1] Generally, "a district court may not consider material beyond the pleadings in ruling
on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled
on other grounds, Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)
(citation omitted). However, documents subject to judicial notice may be considered on a
motion to dismiss. *See Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.

1   Trust was transferred to Chase and memorialized in a Corporate Assignment and Deed of Trust,

2   recorded on January 24, 2013.  (Chase RJN, Ex. 2.)

3       Cortes lost her job in May 2012.  (FAC ¶ 16.)  Plaintiffs applied for a loan modification

4   in March 2013, which Chase reviewed and denied "due to low income."  (*Id.*, ¶ 18.)  Plaintiffs

5   defaulted on their loan, and Chase initiated foreclosure proceedings and recorded a notice of

6   default on September 9, 2013.  (Chase RJN, Ex. 3; Caliber RJN Ex. B.)

7       In or around January 2014, Plaintiffs contacted Chase to notify them that Cortes secured

8   new employment.  (FAC ¶ 19.)  Around the same time, a Chase representative instructed

9   Plaintiffs to "resume their loan modification application and to hold off on making loan

10  payments."  (*Id.*, ¶ 20.)  Plaintiffs submitted a loan modification application on January 24,

11  2014, and, one day later, received written confirmation that Chase received their application.

12  (*Id.*, ¶¶ 21-22.)  On January 29, 2014, Plaintiffs submitted another loan modification application

13  to Chase.  (*Id.*, ¶ 23.)  Plaintiffs did not hear from Chase again until April 16, 2014, when Chase

14  sent them a Notice of Assignment, Sale, or Transfer of Servicing Rights, which stated that

15  Caliber would begin to service the loan on May 1, 2014.  (*Id.*, ¶ 25.)  Six days later, at Chase's

16  request, Plaintiffs faxed their bank statements to Chase.  (*Id.*, ¶ 26.)  On April 23, 2014, Chase

17  requested Guillermo verify his partial ownership of a rental property in Santa Barbara,

18  California.  (*Id.*, ¶ 27.)

19      On May 1, 2014, Caliber began to service Plaintiffs' loan.  On May 12, 2014, Caliber

20  informed Plaintiffs that Mr. Edgar Correa ("Correa") had been assigned as their Single Point of

21  Contact ("SPOC") at Caliber, but there was "no indication that Caliber was reviewing

22  [Plaintiffs] for the modification from Chase."  (*Id.*, ¶¶ 32-33.)  On May 29, 2014, the ALAW

23  Law Firm ("ALAW") recorded a Notice of Trustee Sale on behalf of Caliber, which stated that

24  Plaintiffs' home would be sold on June 19, 2014.  (*Id.*, ¶ 35.)  When Plaintiffs contacted Caliber

25

26

27  1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S.
    104 (1991).  Chase and Caliber attach copies of official public records, whose authenticity is
    capable of accurate and ready determination by resort to sources whose accuracy cannot

28  reasonably be questioned.  *See* Fed R. Evid. 201(b).  In addition, Plaintiffs have not objected
    to the requests.  Accordingly, the Court GRANTS the requests for judicial notice.

on May 31, 2014, a Caliber representative (not their SPOC) informed them that "there was no record of their loan modification application with Chase." (*Id.*, ¶ 34.)

On June 2, 2014, another Caliber representative (not their SPOC) told Plaintiffs that "a loan modification application stopped the foreclosure process." (*Id.*, ¶ 37.) The next day, Plaintiffs called Caliber to inquire about submitting yet another loan modification application. (*Id.*, ¶ 38.) On June 13, 2014, Caliber sent Plaintiffs a letter stating that Caliber required additional documentation in order to process Plaintiffs' request for mortgage assistance. (*Id.*, ¶ 43.) On or around June 16, 2014, Plaintiffs received two letters from Caliber, which confirmed that Plaintiffs' loan modification application was complete and that Plaintiffs' eligibility would be determined within thirty days. (*Id.*, ¶ 44.)

Shortly thereafter, Plaintiffs spoke with another Caliber representative (not their SPOC) who informed them that Caliber needed additional documents. (*Id.*, ¶ 45.) On June 17, 2014, Plaintiffs received notice that the Trustee Sale had been postponed until October 14, 2014. (*Id.*, ¶ 46.) On June 25, 2014, Plaintiffs spoke with another Caliber representative (not their SPOC), who informed them that Caliber's records showed that Plaintiffs submitted a loan modification application, and who reiterated that Caliber still required additional documents. (*Id.*, ¶ 47.) On July 16, 2014, Plaintiffs received a voicemail message asking them to call Caliber. (*Id.*, ¶ 48.) Plaintiffs spoke with another Caliber representative (not their SPOC), who again reiterated that Caliber still needed additional documents from Plaintiffs.[2] (*Id.*)

On or around July 16, 2014, Plaintiffs received a letter from Caliber, which confirmed that Caliber was reviewing Plaintiffs' loan modification application. (*Id.*, ¶ 49.) Caliber stated that it would determine their eligibility within thirty days. (*Id.*) Although Plaintiffs had been advised that the Trustee Sale was set for October 14, 2014, when Plaintiffs called Caliber on July 18, 2014, Correa informed them that there was no date scheduled for a Trustee Sale. (*Id.*, ¶51.)

---

[2]  Plaintiffs never specify what additional documents Caliber required or whether Plaintiffs submitted said documents to Caliber.

United States District Court

For the Northern District of California

1   Plaintiffs filed their original complaint on August 15, 2014.  On September 18, 2014,

2   Caliber removed the action to this Court.  Plaintiffs filed the FAC on October 9, 2014, and

3   allege six causes of action for: (1) violation of California Civil Code section 2923.6 ("Section

4   2923.6"); (2) violation of California Civil Code section 2923.7 ("Section 2923.7"); (3)

5   negligence; (4) violations of 15 U.S.C. section 1691(d)(1) of the Equal Credit Opportunity Act

6   ("ECOA") and 12 C.F.R. section 202.9(c) ("the ECOA claim"); (5) violations of California's

7   Unfair Competition Law, California Business and Professions Code sections 17200, *et seq.*

8   ("the UCL Claim"); and (6) to enjoin the trustee foreclosure sale.

9   The Court will address any additional specific facts as required in its analysis.

10                                          **ANALYSIS**

11   **A.     Legal Standard on Motion to Dismiss.**

12   Defendants move to dismiss the FAC for failure to state a claim.  A motion to dismiss is

13   proper under Federal Rule of Civil Procedure 12(b)(6) where the complaint fails to state a claim

14   upon which relief can be granted.  The Court's "inquiry is limited to the allegations in the

15   complaint, which are accepted as true and construed in the light most favorable to the plaintiff."

16   *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  Even under the liberal

17   pleadings standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to

18   provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

19   and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp.*

20   *v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

21   Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but

22   must allege "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  "A

23   claim has facial plausibility when the Plaintiff pleads factual content that allows the court to

24   draw the reasonable inference that the Defendant is liable for the misconduct alleged."  *Ashcroft*

25   *v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  If the allegations are

26   insufficient to state a claim, a court should grant leave to amend, unless amendment would be

27   futile.  *See, e.g. Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss &*

28   *Lieche, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

**United States District Court**
For the Northern District of California

1  **B.      First Cause of Action: Violation of Section 2923.6.**

2          In their first cause of action, Plaintiffs allege that Chase and Caliber violated Section

3  2923.6, which was enacted as part of California's Homeowners Bill of Rights ("HBOR").

4  Section 2923.6 is designed to eliminate the practice commonly known as dual tracking,

5  whereby a financial institution continues to pursue foreclosure while it evaluates a borrower's

6  loan modification application. *See Jolley v. Chase Home Finance, LLC*, 213 Cal. App. 4th 872,

7  904 (2013). To that end, Section 2923.6 provides, in relevant part:

8          If a borrower submits a complete application for a first lien loan
           modification offered by, or through, the borrower's mortgage servicer, a
9          mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent
           shall not record a notice of default or notice of sale, or conduct a trustee's
10         sale, while the complete first lien loan modification application is pending.
           A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent
11         shall not record a notice of default or notice of sale or conduct a trustee's
           sale until any of the following occurs:
12
           (1)  The mortgage servicer makes a written determination that the borrower
13         is not eligible for a first lien loan modification, and any appeal period
           pursuant to subdivision (d) has expired.
14
           (2)  The borrower does not accept an offered first lien loan modification
15         within 14 days of the offer.

16         (3)  The borrower accepts a written first lien loan modification, but defaults
           on, or otherwise breaches the borrower's obligations under, the first lien
17         loan modification.

18  Cal. Civ. Code § 2923.6(c). "For the purposes of this section, an application shall be deemed

19  'complete' when a borrower has supplied the mortgage servicer with all documents required by

20  the mortgage servicer within the reasonable timeframes specified by the mortgage servicer."

21  Cal. Civ. Code. § 2923.6(h).

22         **1.      The Court Dismisses the Claim Against Caliber**

23         Plaintiffs allege Caliber engaged in dual tracking, because it continued to foreclose on

24  Plaintiffs' home while it simultaneously considered Plaintiffs' application for a loan

25  modification. Specifically, Plaintiffs assert that Caliber received Plaintiffs' completed loan

26  modification application from both Chase and Plaintiffs. According to Plaintiffs, Caliber

27  nevertheless filed a Notice of Trustee Sale against Plaintiffs instead of reviewing Plaintiffs'

28  original completed loan modification application. Caliber argues that Plaintiffs' factual

United States District Court

For the Northern District of California

1  allegations demonstrate that no dual tracking occurred, because any foreclosure process halted

2  as soon as Plaintiffs submitted a loan modification application.

3      Taking the allegations as true, they do not support an inference of dual tracking.  First,

4  there are no facts to show that Caliber received Plaintiffs' completed loan modification

5  application from Chase on May 1, 2014, when Caliber began to service Plaintiffs' loan.  Rather,

6  Plaintiffs merely allege that Chase had a duty to send the completed loan modification

7  application to Caliber.  Second, Plaintiffs do not allege any facts that indicate that Caliber

8  continued to foreclose on Plaintiffs' home while it simultaneously considered Plaintiffs'

9  application for a loan modification.  Rather, Plaintiffs allege facts that indicate the opposite to

10  be true.  Plaintiffs allege that Caliber informed Plaintiffs that "there was no record of their loan

11  modification application with Chase," and Plaintiffs do not allege any facts to suggest Caliber

12  knew that statement was false.  (FAC ¶ 34.)  On May 29, 2014, Caliber recorded a Notice of

13  Trustee Sale which stated that Plaintiffs' home would be sold on June 19, 2014.  (*Id.*, ¶ 35.)  It

14  is unclear from the facts alleged whether Plaintiffs filed a new loan modification application

15  with Caliber or whether the application Plaintiffs filed with Chase showed up in Caliber's

16  system, but on June 2, 2014, Caliber informed Plaintiffs that "a loan modification application

17  stopped the foreclosure process."  (*Id.*, ¶ 37.)  Caliber has not recorded a notice of default or

18  notice of sale, or conducted a trustee's sale since June 2, 2014.  Taking the allegations as true,

19  they make clear that the foreclosure process stopped as soon as Caliber received a loan

20  modification application.

21      Accordingly, even construing the amended complaint  in the light most favorable to

22  Plaintiffs, the Court finds that Plaintiffs failed to state sufficient facts to support a claim for dual

23  tracking in violation of Section 2923.6 against Caliber, and it GRANTS Caliber's motion to

24  dismiss this cause of action.

25      **2.      The Court Dismisses the Claim Against Chase.**

26      Plaintiffs also allege that Chase violated Section 2923.6, by "failing to process

27  Plaintiffs' completed loan modification application for several months," and by "failing to fully

28  communicate the status of Plaintiffs' loan modification application."  (*Id.*, ¶ 60.)  Plaintiffs,

1    however, do not allege any facts to show that Chase engaged in dual tracking.  Specifically,

2    Plaintiffs do not allege that Chase recorded a notice of default or notice of sale, or conducted a

3    trustee's sale while it simultaneously considered Plaintiffs' loan modification application.

4    According to Plaintiffs, they originally filed for a loan modification in March 2013, which

5    Chase reviewed and denied "due to low income."  (*Id.*, ¶ 18.)  When Plaintiffs defaulted on their

6    loan, Chase initiated foreclosure proceedings and recorded a Notice of Default on September 9,

7    2013.  (Chase RJN, Ex. 3; Caliber RJN Ex. B.)  Cortes secured new employment in January

8    2014, and Plaintiffs submitted a new loan modification application on January 24, 2014.  (FAC

9    ¶¶ 19, 21.)  Plaintiffs fail to allege any facts to show that Chase continued to foreclose on

10   Plaintiffs' home, while it simultaneously considered that loan modification application.

11           Moreover, Plaintiffs' allegations fail because Section 2923.6 does not require a servicer

12   to process a borrower's completed loan modification application within "several months" or to

13   "fully communicate the status of [a borrower's] loan modification application."  (*Id.*, ¶ 60.)

14   Accordingly, the Court finds that Plaintiffs fail to state a claim for dual tracking in violation of

15   Section 2923.6 against Chase, and it GRANTS Chase's motion to dismiss this cause of action.

16   **C.      Second Cause of Action: Violation of Section 2923.7.**

17           In their second cause of action, Plaintiffs allege Caliber violated Section 2923.7.  In

18   connection with the California legislature's attempt to eliminate the practice of dual tracking,

19   the legislature enacted an SPOC provision in the HBOR to "prevent borrowers from being

20   given the run around."  *See Jolley*, 213 Cal. App. 4th at 904-05.  To that end, Section 2923.7

21   provides: "[u]pon request from a borrower who requests a foreclosure prevention alternative,

22   the mortgage servicer shall promptly establish a single point of contact and provide to the

23   borrower one or more direct means of communication with the single point of contact."  Cal.

24   Civ. Code § 2923.7(a).  "'[S]ingle point of contact' means an individual or team of personnel

25   each of whom has the ability and authority to perform the responsibilities described in

26   subdivisions (b) to (d), inclusive.  The mortgage servicer shall ensure that each member of the

27   team is knowledgeable about the borrower's situation and current status in the alternatives to

28   foreclosure process."  *Id.* § 2923.7(e).

"While it is true that the statute does not define how frequently a SPOC must communicate with a borrower, a mortgage servicer may not simply make a nominal 'appointment' of a SPOC who never communicates with the borrower." *Mungai v. Wells Fargo Bank*, et al., 2014 WL 2508090, at * 10 (N.D. Cal. June 3, 2014) (finding that it would render the SPOC requirement a nullity if the court were to hold that a mortgage servicer complies with Section 2923.7 when it assigns an SPOC who fails to communicate with the borrower); *see also Garcia v. Wells Fargo Bank N.A.*, 2014 WL 458208, at *4 (N.D. Cal. Jan. 31, 2014) (denying motion to dismiss an SPOC claim where plaintiff alleged that the assigned SPOC was unresponsive to requests for information). Plaintiffs allege that Caliber violated Section 2923.7(b) by failing to properly establish and maintain a SPOC. Caliber argues that Plaintiffs fail to state a claim, because they made multiple phone calls to persons other than their SPOC, even though they knew Correa was their SPOC. The Court disagrees.

Plaintiffs allege that Caliber assigned Correa as their SPOC. (*See* FAC ¶ 32.) Plaintiffs also allege that they attempted to contact their SPOC four times between May 12, 2014 and June 4, 2014. (*Id.*, ¶¶ 34, 37-39.) Each time, Plaintiffs allege they were connected to a different Caliber representative. Between June 16, 2014 and July 16, 2014, Plaintiffs spoke with three more representatives. (*Id.*, ¶¶ 45, 47-48.) It was not until July 18, 2014 that Plaintiffs spoke with their SPOC. (*Id.*, ¶ 50.) Taking the allegations as true, it is reasonable to infer that Correa was unavailable or unresponsive to Plaintiffs' requests for information.

Accordingly, the Court finds that Plaintiffs allege facts sufficient to state a claim for a violation of Section 2923.7, and it DENIES Caliber's motion to dismiss this cause of action.

**D.     Third Cause of Action: Negligence.**

Plaintiffs' third cause of action alleges that Chase and Caliber were negligent in processing Plaintiffs' loan modification application. Plaintiffs assert that Defendants had a duty to properly evaluate their application and to properly advise and inform them of their rights related to the loan modification process. (FAC ¶ 71.) Plaintiffs claim that Chase breached its duty when it failed to send Caliber Plaintiffs' completed loan modification application. (*Id.*, ¶ 72.) Plaintiffs claim that Caliber breached its duty, because it filed a Notice of Trustee Sale

United States District Court

For the Northern District of California

("NOS") when Plaintiffs were in the process of trying to get a loan modification.  (*Id.*)
Defendants argue that Plaintiffs' negligence claim fails, because neither Defendant owed them a
duty of care.

To state a cause of action for negligence, a plaintiff must allege: (1) the defendant owed
the plaintiff a duty of care; (2) the defendant breached that duty, and (3) the breach proximately
caused the plaintiff's damages or injuries.  *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal.
App. 4th 49, 62 (2013).  "The existence of a duty of care owed by a defendant to a plaintiff is a
prerequisite to establish a claim for negligence."  *Nymark v. Heart Fed. Savings & Loan Ass'n*,
231 Cal. App. 3d 1089, 1096 (1991).  The "question of the existence of a legal duty of care . . .
presents a question of law which is to be determined by the courts alone."  *First Interstate Bank
of Ariz., N.A. v. Murphy, Weir & Butler*, 210 F.3d 983, 987 (9th Cir. 2000).

**1.     The Court Dismisses the Claim Against Chase.**

Plaintiffs argue that Chase owed them a duty of care in processing their loan
modification application.  Chase argues that Plaintiffs fail to state a claim for negligence,
because a lender does not owe a borrower a duty of care in the loan modification context.
Under California law, "as a general rule, a financial institution owes no duty of care to a
borrower when the institution's involvement in the loan transaction does not exceed the scope
of its conventional role as a mere lender of money."  *Nymark*, 231 Cal. App. 3d at 1096.
"Liability to a borrower for negligence arises only when the lender 'actively participates' in the
financed enterprise 'beyond the domain of the usual money lender.'"  *Id.* (Internal citation
omitted).  However, "*Nymark* does not support the sweeping conclusion that a lender never
owes a duty of care to a borrower."  *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872,
901 (2013) (internal quotations omitted).  In order to determine whether an exception to the
general rule applies, courts should balance the following six factors: (1) the extent to which the
transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff; (3)
the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection
between the defendant's conduct and the injury suffered; (5) the moral blame attached to the

defendant's conduct; and (6) the policy of preventing future harm. *Nymark*, 231 Cal. App. 3d at 1098 (citing *Biakanja v. Irving*, 49 Cal. 2d 647, 649-50 (1958)).

As one of this Court's colleagues recently noted, "whether a lender owes a duty of care to a borrower in the loan modification context is relatively unsettled[.]" *Maomanivong v. National City Mortgage, Co.*, 2014 WL 4623873, at *3 (N.D. Cal. Sept. 15, 2014). In cases where courts have found the facts sufficient to show a lender owed a borrower a duty of care, the claims generally have not been based on a theory that the lender was required to approve a modification. Rather, the borrowers have alleged that the lender or servicer mishandled a loan modification application. For example, in *Alvarez v. BAC Home Loans Servicing*, the plaintiffs alleged that defendants relied on incorrect information to deny plaintiffs' applications for a loan modification. 228 Cal. App. 4th 941, 945 (2014). Similarly, in *Rijhwani v. Wells Fargo Home Mortgage, Inc.*, the plaintiffs alleged that: (1) their SPOC never submitted their application to defendants; and (2) defendant "tricked them into defaulting on the second loan so that [defendant] could string them along with respect to the loan modification on the first loan so it could foreclose under the second loan." 2014 WL 890016, at *17 (N.D Cal. Mar. 3, 2014). In both cases, the plaintiffs' claim was premised on the theory that because the defendants mishandled the documents, they deprived the plaintiffs of the possibility of obtaining a loan modification application, and their homes were sold.

In contrast, when courts have found the facts insufficient to show a duty of care, the borrowers have not alleged facts that would show that the lender was acting outside the scope of its conventional role as a lender of money. For example, in *Lueras v. BAC Home Loans Servicing*, the plaintiff alleged the defendants owed him a duty of care to: (1) handle his loan "in such a way to prevent foreclosure and forfeiture of his property"; (2) "determine modification approvals, explore and offer foreclosure alternatives with [plaintiff] prior to default"; (3) "exercise reasonable care and skill in timely and accurately responding to customer requests and inquiries"; (4) "record proper land records"; (5) "properly service the loan"; (6) ensure chain of title prior to foreclosing"; and (7) "stop all foreclosure sales that are unlawful." 221 Cal. App. 4th 49, 62 (2013). The court held that the plaintiff did not state facts sufficient to

United States District Court

For the Northern District of California

show a duty, because "a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money." *Id.* at 67. The court also concluded that the "*Biakanja* factors do not support imposition of a common law duty to offer or approve a loan modification." *Id.* at 67. However, the court granted the plaintiff leave to state a claim for negligent misrepresentation, because "a lender does owe a duty to a borrower to not make material misrepresentations about the status of an application for a loan modification or about the date, time, or status of a foreclosure sale." *Id.* at 68.

Similarly, in *Stiles v. Wells Fargo Bank*, the plaintiff alleged that the defendant's negligent conduct included "making intentional misrepresentations, deceit, and/or concealment of material facts known to [defendant]." 2014 WL 7146950, at *6 (N.D. Cal. Dec. 15, 2014). The court held that, "absent a misrepresentation, a lender's actions do not give rise to a negligence claim because a lender does not have a duty of care to handle [the borrower's] loan in such a way to prevent foreclosure and forfeiture of [the] property." *Id.* at *7 (quotation marks and citation omitted). The court also concludes that the plaintiff did not allege special circumstances sufficient to create a duty owed by the defendant. Rather, the plaintiff made only conclusory allegations that the defendant stepped beyond the ordinary lender and loan servicing rules and did not clearly identify the misrepresentations or facts concealed by the defendant. *Id.* The court dismissed the claim, but it granted the plaintiff leave to amend to plead additional allegations to establish a duty of care.

This Court finds the facts alleged in this case more similar to the facts alleged in *Lueras* and *Stiles* than to the facts alleged in *Alvarez* and *Rijhwani*. Plaintiffs do not allege facts sufficient to show that Chase acted outside the scope of its conventional role as a lender of money. Plaintiffs allege Chase was required to forward the completed loan application to Caliber. However, there are no facts to suggest Chase mishandled any documents during the application process or that Chase lost the application. Nor do they allege facts to show Chase made any material misrepresentations about what it did with their application. Even assuming

11

Chase had a duty to forward the application to Caliber, it is unclear how Chase's failure to do so caused Plaintiffs damage.

Moreover, when the Court applies the *Biakanja* factors to the facts in this case, the Court finds that Plaintiffs do not allege facts sufficient to show that Chase owed them a duty. First, the extent to which the transaction was intended to affect Plaintiffs is somewhat remote under the circumstances of this case. As the court in *Lueras* found, "if the modification was necessary due to the borrower's inability to repay the loan, the borrower's harm, suffered from denial of a loan modification, would not be closely connected to the lender's conduct." *Lueras*, 221 Cal. App. 4th at 67. Plaintiffs do not allege facts to show that the loan modification was necessary due to anything other than their inability to repay the loan. With respect to the second and third factors, the harm Plaintiffs suffered from Chase's failure to send Caliber their completed application is unclear from the facts alleged. In addition, Plaintiffs have not yet lost their home, and they do not allege facts that indicate their loan modification would have been approved had Chase forwarded the completed loan application to Caliber. Fourth, the closeness of the connection between Chase's alleged misconduct and the injury suffered is similarly remote. Fifth, no moral blame is attached to Chase's alleged misconduct, because there is no indication that Chase's failure to forward Plaintiffs' completed application to Caliber put Plaintiffs in a position that created the need for a loan modification. *See id.* ("If the lender did not place the borrower in a position creating a need for a loan modification, then no moral blame would be attached to the lender's conduct."). The sixth factor is not dispositive in this case. In light of the other factors, even if Plaintiffs alleged sufficient facts to show that there is a policy of preventing future harm of this kind, it would be insufficient to tip the balance towards finding a duty.

For the reasons stated above, Plaintiffs do not state a claim for negligence against Chase. Because the facts are insufficient to demonstrate a legal duty, the Court does not address whether Plaintiffs sufficiently alleged the other elements of negligence. Accordingly, the Court GRANTS Chase's motion to dismiss Plaintiffs' third cause of action.

//

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1

2.     **The Court Dismisses the Claim Against Caliber.**

2      Plaintiffs also argue that Caliber owed them a duty of care in processing their loan

3    modification application.  Plaintiffs allege that Caliber breached its duty to them by filing a

4    NOS when they were in the process of trying to get a loan modification.  (FAC ¶ 72.)  However,

5    like Plaintiffs' allegations against Chase, Plaintiffs do not allege facts sufficient to show that

6    Caliber was acting outside the scope of its conventional role as a lender of money.

7      Plaintiffs allege Caliber should not have filed a NOS when they were in the process of

8    attempting to obtain a loan modification.  However, for the reasons stated above in Section B,

9    there are no facts to suggest Caliber was reviewing Plaintiffs' loan modification application

10   when it filed a NOS or to suggest that Caliber mishandled any documents during the application

11   process.  Even assuming Caliber had a duty not to file a NOS when Plaintiffs were seeking a

12   modification, it is not clear how Caliber damaged Plaintiffs when it filed the NOS.  Plaintiffs do

13   not allege that Caliber's failure to properly process their application deprived them of the

14   possibility of obtaining a loan modification, or of avoiding foreclosure.

15     Moreover, when the Court applies the *Biakanja* factors to the facts in this case, the court

16   finds that Plaintiffs do not allege facts sufficient to show that Caliber owed them a duty.  First,

17   the extent to which the transaction was intended to affect Plaintiffs is somewhat remote under

18   the circumstances of this case.  Plaintiffs do not allege facts to show that the loan modification

19   was necessary due to anything other than their inability to repay the loan.  *See Lueras*, 221 Cal.

20   App. 4th at 67.  With respect to the second and third factors, the harm Plaintiffs suffered from

21   Caliber filing a NOS is unclear.  Further, Plaintiffs have not yet lost their home, and they do not

22   allege facts that indicate Caliber materially misrepresented the status their loan modification

23   when it filed the NOS.  The facts alleged indicate that Caliber was not reviewing Plaintiffs for a

24   modification when it filed the NOS.  Plaintiffs allege that Caliber informed them that "there was

25   no record of their loan modification application with Chase," but they do not allege any facts to

26   suggest that the statement was false, let alone that Caliber knew it was false.  (FAC ¶ 34.)

27   Fourth, the closeness of the connection between Caliber's alleged misconduct and the injury

28   suffered is similarly remote.  Fifth, no moral blame is attached to Chase's alleged misconduct,

United States District Court

For the Northern District of California

1  because there is no indication that filing a NOS put Plaintiffs in a position that created the need

2  for a loan modification.  The sixth factor is not dispositive in this case.  In light of the other

3  factors, even if Plaintiffs alleged sufficient facts to show that there is a policy of preventing

4  future harm of this kind, it would be insufficient to tip the balance towards finding a duty.

5      For the reasons stated above, Plaintiffs do not state a claim for negligence against

6  Caliber.  Because the facts are insufficient to demonstrate a legal duty, the Court does not

7  address whether Plaintiffs sufficiently alleged the other elements of negligence.  Accordingly,

8  the Court GRANTS Caliber's motion to dismiss Plaintiffs' third cause of action.

9  **E.      Fourth Cause of Action: The ECOA Claim.**

10      Plaintiffs' fourth cause of action alleges that Chase and Caliber violated the ECOA

11  when they failed to notify Plaintiffs of "any action" within thirty days of receiving Plaintiffs'

12  completed loan modification application.  (FAC ¶¶ 85-86.)  Although Plaintiffs' primary claim

13  appears to be that Defendants violated 15 U.S.C. section 1691(d)(1) ("Section 1691(d)(1)"),

14  which relates to complete applications, Plaintiffs also allege that Defendants violated 12 C.F.R.

15  section 202.9(c) ("Section 202.9(c)"), which relates to incomplete applications.  (*See* FAC ¶¶

16  82-83.)

17      "Within thirty days (or such longer reasonable time as specified in regulations of the

18  Bureau for any class or credit transaction) after receipt of a completed application for credit, a

19  creditor shall notify the applicant of its action on the application."  15 U.S.C. § 1691(d)(1).  A

20  completed application is one in which "a creditor has received all the information that the

21  creditor regularly obtains and considers in evaluating applications for the amount and type of

22  credit requested . . . ."  12 C.F.R. § 202.2(f).  In reviewing an application for completeness, "the

23  creditor shall exercise reasonable diligence in obtaining such information" necessary to decide

24  whether to extend credit.  *Id.*

25      "Within 30 days after receiving an application that is incomplete regarding matters that

26  an applicant can complete, the creditor shall notify the applicant either: (i) Of action taken, in

27  accordance with paragraph (a) of this section; or (ii) Of the incompleteness, in accordance with

28  paragraph (c)(2) of this section."  12 C.F.R. § 202.9(c)(1).  "If additional information is needed

1   from an applicant the creditor shall send a written notice to the applicant specifying the

2   information needed, designating a reasonable period of time for the applicant to provide the

3   information, and informing the applicant that failure to provide the information requested will

4   result in no further consideration being given to the application." *Id.* § 202.9(c)(2).

5          **1.      The Court Denies Chase's Motion to Dismiss the Claim.**

6          Plaintiffs allege Chase failed to notify them of "any action" within thirty days of its

7   receipt of their completed loan modification application.  (FAC ¶ 85.)  Chase argues that

8   Plaintiffs cannot state a claim, because it never received a complete application from Plaintiffs.

9   Chase asserts that it was not obligated to provide Plaintiffs with notice of any action on their

10  application until the application was complete, and that by the time the application was

11  complete, Chase no longer serviced the loan.  Chase, however, does not address whether it was

12  required, pursuant to Section 202.9(c), to notify Plaintiffs within thirty days if Plaintiffs'

13  application was incomplete.

14         Plaintiffs submitted a loan modification application on January 24, 2014.  (*Id.*, ¶¶ 21,

15  22.)  It is unclear from the facts alleged whether Plaintiffs' application was "complete."

16  Plaintiffs did not hear from Chase again until April 16, 2014, almost three months after

17  Plaintiffs submitted their application, when Chase advised them that Caliber would begin to

18  service their loan on May 1, 2014.  (*Id.*, ¶ 25.)  Taking the allegations as true, Chase neither

19  confirmed that Plaintiffs' loan modification application was complete, nor provided notice that

20  the application was incomplete within thirty days of its receipt of Plaintiffs' application.

21  Although these facts do not state a claim for violation of Section 1691(d)(1), they do state a

22  claim for violation of Section 202.9(c).  Even if the application was incomplete between

23  January 24, 2014 and April 16, 2014, as Chase argues that it was, Chase failed to notify

24  Plaintiffs that their application was incomplete within thirty days of its receipt of the incomplete

25  application.

26         Accordingly, the Court DENIES Chase's motion to dismiss Plaintiffs' fourth cause of

27  action.

28  //

**2.      The Court Denies Caliber's Motion to Dismiss the Claim.**

Plaintiffs also allege Caliber failed to notify them of "any action" within thirty days of its receipt of their completed loan modification application. (*Id.*, ¶ 86.) Specifically, Plaintiffs allege that their application was complete by June 16, 2014, and that Caliber sent them a letter to inform them that its determination on their eligibility would be made on or around July 16, 2014. Plaintiffs allege that, on July 16, 2014, Caliber again confirmed that their application was complete and stated it would review Plaintiffs' application for a determination on their eligibility within thirty days. Caliber argues that Plaintiffs have not alleged facts to show that it violated Section 1691(d)(1), because Plaintiffs' application was not complete until July 16, 2014. Thus, Caliber argues it was not required to take further action until August 15, 2014. Caliber states that Plaintiffs preemptively filed this lawsuit instead of waiting for a decision from Caliber.

Although Caliber notified Plaintiffs that the application was "complete" on June 16, 2014, the allegations also suggest that Caliber thereafter informed Plaintiffs that more documents were needed to complete the application. (*Id.*, ¶¶ 44-45, 47-48.) Plaintiffs do not specify which documents Caliber still needed or whether they submitted them, but, on or around July 16, 2014, Plaintiffs received a letter from Caliber, which confirmed that their application was complete. Caliber also stated it would review their application for a determination on their eligibility within thirty days. (*Id.*, ¶ 49.) Even if Caliber is correct that Plaintiffs' application was not "complete" until July 16, 2014, Caliber failed to notify Plaintiffs of its action within thirty days. When the thirty-day time period expired on August 15, 2014, and Plaintiffs did not have a determination from Caliber, Plaintiffs filed the present action. Caliber argues that Plaintiffs preemptively filed this action, however there is no indication from the facts alleged that Caliber had made a determination regarding Plaintiffs' eligibility on August 15, 2014.

Accordingly, Plaintiffs state a claim under Section 1691(d)(1) of the ECOA, and the Court DENIES Caliber's motion to dismiss this cause of action.

//

//

16

United States District Court

For the Northern District of California

**F.     Fifth Cause of Action: The UCL Claim.**

In their fifth claim for relief, Plaintiffs allege that Chase and Caliber violated the unfair and unlawful prongs of the UCL.  Specifically, Plaintiffs allege that they, "and other similarly situated mortgagors, transacting with Defendants, faced foreclosure on their property because Defendants unlawfully and unfairly processe[d] Plaintiffs' loan modification application without actually underwriting Plaintiffs' application or determining if Plaintiffs qualified for a loan modification."  (FAC ¶ 93.)  Plaintiffs allege that Defendants' "conduct includes, but is not limited to, violation of California Civil Code sections 1709, 1710, and 15 U.S.C. § 1691(d)(1)."[3]  (FAC ¶ 95.)  Chase and Caliber argue that Plaintiffs fail to state a claim under the unfair and unlawful prongs of the UCL.

The UCL prohibits any "unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  "Since section 17200 is [written] in the disjunctive, it establishes three separate types of unfair competition.  The statute prohibits practices that are either 'unfair' or 'unlawful,' or 'fraudulent.'"  *Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003).  Accordingly, to state a claim for unfair competition, a "plaintiff must establish that the practice is either unlawful (i.e., is forbidden by law), unfair (i.e., harm to victim outweighs any benefit) or fraudulent (i.e., is likely to deceive members of the public)."  *Albillo v. Intermodal Container Servs., Inc.*, 114 Cal. App. 4th 190, 206 (2003).

**1.     Plaintiffs Fail to Allege They Have Standing Under the UCL.**

Chase argues that Plaintiffs lack standing under the UCL, because they have not alleged that they lost any money or property as a result of Chase's allegedly unfair and unlawful business practices.  Although Caliber did not raise the issue of standing, the Court will address the issue with respect to both Defendants.

In order to have standing under the UCL, a plaintiff must show that he or she has "suffered injury in fact and [] lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.  This provision requires a plaintiff to sufficiently allege: (1) he or

---

[3] Although Plaintiffs cite these provisions of the Civil Code, there are no facts in the FAC that suggest Defendants violated these statutes.  N addition, Plaintiffs' opposition focuses on their negligence and statutory claims.

1    she has "lost 'money or property' sufficient to constitute an 'injury in fact' under Article III of

2    the Constitution" and (2) there is a "causal connection" between the defendant's alleged UCL

3    violation and the plaintiff's injury in fact. *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203-04

4    (9th Cir. 2010) (citations omitted).

5         Taking the allegations as true, Plaintiffs fail to allege facts sufficient to support a finding

6    that they lost money or property as a result of either Defendants' conduct.  Plaintiffs claim they

7    suffered economic injury because of increased home loan debt, attorney's fees, and a damaged

8    credit score.  (FAC ¶ 99.)  However, Plaintiffs have not demonstrated that there is a "causal

9    connection" between the Defendants' alleged UCL violations and their injury.  Plaintiffs do not

10   allege facts to support an inference that they could have avoided increased home loan debt or a

11   damaged credit score if: (1) Chase had reviewed their loan modification application in under

12   three months or (2) if Caliber had reviewed their loan modification before Plaintiffs filed this

13   lawsuit. *See Graybill v. Wells Fargo Bank, N.A.*, 953 F. Supp. 2d 1091, 1107 (N.D. Cal. 2013);

14   *see also Cordon v. Wachovia Mortgage., a Div of Wells Fargo Bank,* N.A., 776 F. Supp. 2d

15   1029, 1039 (N.D. Cal. 2011) (finding lack of standing under the UCL where a plaintiff cannot

16   attribute alleged harm to the wrongful actions of a defendant).

17        Moreover, Plaintiffs' home has not been sold, and any attorney's fees Plaintiffs incurred

18   by bringing this suit does not demonstrate that they lost money or property as a result of

19   Chase's or Caliber's alleged conduct. *See Cordon*, 776 F. Supp. 2d at 1039 (finding attorney's

20   fees and costs incurred in bringing a UCL claim insufficient to confer standing under Section

21   17204 because it would allow a private plaintiff bringing a UCL claim automatic standing by

22   merely filing suit); *see also Selby v. Bank of America, Inc.*, 2010 U.S. Dist. LEXIS 139966, at

23   *24 (S.D. Cal. Oct. 27, 2010) ("The court is not persuaded that attorney's fees incurred in suing

24   for a violation constitutes injury within the meaning of § 17204 (otherwise, any plaintiff filing

25   suit would be able to show injury).").

26        Accordingly, Plaintiffs do not have standing to seek UCL relief from Chase or Caliber.

27   However, even if Plaintiffs had alleged facts sufficient to show standing, they fail to state a

28   claim against Chase or Caliber under either the unlawful or unfair prongs of the UCL.

18

1

**2.      "Unlawful" Business Act or Practice Prong.**

Plaintiffs' UCL claim is premised, in part, on allegations that Chase and Caliber engaged in unlawful conduct.  (FAC ¶ 93.)  The "unlawful" prong proscribes "anything that can be properly called a business practice and that at the same time is forbidden by law."  *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 717-18 (2001) (internal quotations omitted).  To state a claim based on the unlawful prong, Plaintiffs must allege that Chase's and Caliber's practices are "forbidden by law, be it civil, criminal, federal, state, or municipal, statutory, regulatory, or court made."  *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994).

**a.      Plaintiffs Do Not State a Claim Against Chase.**

Plaintiffs argue that Chase violated the unlawful prong based upon the negligence and ECOA claims.  The Court granted Chase's motion to dismiss Plaintiffs' negligence claim.  Accordingly, to the extent Plaintiffs' UCL claim is based upon Chase acting negligently, the claim fails.  However, as discussed above, Plaintiffs state a claim under the ECOA against Chase.  Typically, that would be sufficient to support the UCL claim.  *See Berryman v. Merit Property Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007) ("a violation of another law is a predicate for stating a cause of action" under the unlawful prong).  However, the "ECOA bars pursuit of state law claims if the plaintiff also pursues relief under ECOA itself."  *Cabrera v. Countrywide Home Loans Inc.*, 2013 WL 1345083, at *6 (N.D. Cal. Apr. 2, 2013) (dismissing UCL claim based on ECOA violation where plaintiff also brought a claim under the ECOA); *see also* 15 U.S.C. § 1691d(e).  Because Plaintiffs also brought a claim under the ECOA, they are not entitled to also assert a claim under the UCL based upon the same purported conduct.  Accordingly, Plaintiffs fail to state a claim for unlawful business practices against Chase.

**b.      Plaintiffs Do Not State a Claim Against Caliber.**

Plaintiffs argue that Caliber violated the unlawful prong based upon their Section 2923.6 and negligence claims.  However, because the Court finds that Plaintiffs fail to allege facts showing a violation of Section 2923.6 or negligence, Plaintiffs have not stated a claim for unlawful business practices against Caliber.  *See Berryman*, 152 Cal. App. 4th at 1554.

United States District Court
For the Northern District of California

19

1

**3.      "Unfair" Business Act or Practice Prong.**

2

Plaintiffs' UCL claim is also premised, in part, on allegations that Chase and Caliber

3

engaged in unfair conduct.  (FAC ¶ 93.)  Unfair simply means any practice whose harm to the

4

victim outweighs any benefits.  *Olsen v. Breeze, Inc.*, 48 Cal. App. 4th 608, 618 (1996).  "The

5

court must weigh the utility of the defendant's conduct against the gravity of the harm to the

6

alleged victim."  *Gafcon, Inc. v. Ponsor & Assocs.*, 98 Cal. App. 4th 1388, 1425 n.15 (2002).

7

**a.      Plaintiffs Do Not State a Claim Against Chase.**

8

Plaintiffs claim that Chase violated the unfair prong.  Specifically, Plaintiffs argue that

9

Chase had a duty to: (1) supply Caliber with all of Plaintiffs' loan documents, including their

10

loan modification application and (2) to review Plaintiffs' loan modification application and

11

return Plaintiffs' calls regarding the status of the modification in a timely manner.  Plaintiffs

12

concede that it is unclear whether Chase provided Caliber with Plaintiffs' loan modification

13

application, and there is no indication that Chase failed to supply Caliber with any other loan

14

documents.  Accordingly, Plaintiffs fail to allege facts sufficient to support a finding that Chase

15

acted unfairly by failing to supply Caliber with Plaintiffs' loan documents.

16

With respect to Plaintiffs' argument that Chase had a duty to review Plaintiffs'

17

application and return Plaintiffs' calls in a timely manner, Plaintiffs argue that Chase's actions

18

led Caliber to file a Notice of Trustee Sale, which was unfair.  Plaintiffs do not allege facts that

19

demonstrate Chase failed to return Plaintiffs' calls regarding the status of Plaintiffs'

20

modification. Plaintiffs do allege facts sufficient to demonstrate that Chase failed to timely

21

notify Plaintiffs that their application was incomplete.  However, in weighing Chase's failure to

22

timely notify Plaintiffs against the gravity of the harm to Plaintiffs, the Court finds that

23

Plaintiffs fail to allege facts sufficient to show that Chase's conduct amounted to a violation of

24

the unfair prong of the UCL.  Plaintiffs assert that Caliber filed a Notice of Trustee Sale,

25

because Chase failed to review Plaintiffs' application in a timely manner.  There are no facts to

26

suggest that Chase would have granted Plaintiffs' modification request.  There are also no facts

27

to suggest that Chase would not have filed the Notice of Trustee Sale if it reviewed Plaintiffs'

28

United States District Court

For the Northern District of California

20

United States District Court

For the Northern District of California

1    application sooner and had timely notified Plaintiffs that their application was incomplete.

2    Accordingly, Plaintiffs do not state a claim for unfair business practices against Chase.

3                    **b.      Plaintiffs Do Not State a Claim Against Caliber.**

4           Plaintiffs claim that Caliber violated the unfair prong on the basis that it was unfair for

5    Caliber to engage in dual tracking in violation of Section 2923.6.  However, because the Court

6    finds that Plaintiffs fail to allege facts sufficient to show a violation of Section 2923.6, Plaintiffs

7    have not stated a claim for unfair business practices against Caliber.

8           Accordingly, the Court GRANTS Defendants' motions to dismiss Plaintiffs' UCL claim.

9    **G.     The Court Dismisses the Sixth Cause of Action to Enjoin Trustee Foreclosure Sale,**
     **Without Leave to Amend.**
10

11          In their sixth cause of action, Plaintiffs seek an injunction to enjoin a trustee's sale on

12   their home.  However, under both federal and state law, injunctive relief is merely a remedy, not

13   an independent cause of action.  *See Hafiz v. Greenpoint Mortgage, Inc.*, 652 F. Supp. 2d 1039,

14   1043 (N.D. Cal. 2009) (citing *Boeing Co. v. Cascade Corp.*, 207 F.3d 1177, 1192 (9th Cir.

15   2000)); *see also Cox Communications PCS, LP v. City of San Marco*, 204 F. Supp. 2d 1272,

16   1283 (S.D. Cal. 2002) ("Injunctive relief, like damages, is a remedy requested by the parties,

17   not a separate cause of action.") (emphasis in original); *City of South Pasadena v. Dept. of*

18   *Transp.*, 29 Cal. App. 4th 1280, 1293 (1994) ("Injunctive relief is a remedy, not a cause of

19   action.").

20          Accordingly, the Court GRANTS Defendants' motions to dismiss this claim, without

21   leave to amend.  The Court's ruling does not preclude Plaintiffs including a request for

22   injunctive relief in their prayer for relief, and it expresses no opinion on whether Plaintiffs

23   would be entitled to an injunction if they prevail on any of their claims.

24                                  **CONCLUSION**

25          For the foregoing reasons, the Court GRANTS Chase's motion to dismiss Plaintiffs'

26   first, third, fifth, and sixth causes of action, and DENIES Chase's motion to dismiss Plaintiffs'

27   fourth cause of action.  The Court also GRANTS Caliber's motion to dismiss Plaintiffs' first,

28

1    third, fifth, and sixth causes of action, and DENIES Caliber's motion to dismiss Plaintiffs'

2    second and fourth causes of action.

3           Because this Court cannot say that it would be an act of futility to amend the first, third,

4    and fifth causes of action, Plaintiffs may file an amended complaint no later than April 13,

5    2015. Defendants shall answer or otherwise respond by no later than May 4, 2015.

6           The parties shall appear for an initial case management conference on May 22, 2015 at

7    11:00 am. The parties' joint case management statement shall be due on May 15, 2015.

8           **IT IS SO ORDERED.**

9    Dated: March 23, 2015



10   JEFFREY S. WHITE
     UNITED STATES DISTRICT JUDGE