1
2
3
4

Tiffany R. Norman (SBN 239873)
TRN LAW ASSOCIATES
654 Sacramento Street, Second Floor
San Francisco, CA 94111
Telephone: (415) 823-4566
Facsimile: (415) 762-5490

5
6

Attorney for Plaintiffs GILBERTO F.
GUILLERMO and
LILLIAN S. CORTES

7
8
9

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

10
11
12
13
14
15
16
17
18
19
20
21

| | |
|---|---|
| GILBERTO F. GUILLERMO and LILLIAN S. CORTES, | CASE NO. 4:14-CV-04212-JSW |
| Plaintiffs, | PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK, NATIONAL ASSOCIATION'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT |
| vs. | |
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION; | |
| CALIBER HOME LOANS, INC. a California Corporation; | Date: July 31, 2015 Time: 9:00 a.m. Place: Courtroom 5, 2nd Floor Judge: Hon. Jeffrey S. White |
| and | |
| DOES 1-25, inclusive; | |
| Defendants. | |

22
23

    Plaintiffs hereby file their opposition to Defendant's Motion to Dismiss as follows:

24
25
26
27
28

1

# Table of Contents

I.  INTRODUCTION AND BACKGROUND .............................................................1

2

II. STANDARD OF REVIEW ...........................................................................8

3

III. LEGAL ARGUMENT ............................................................................. 10

4

   A.PLAINTIFFS ADEQUATELY PLED THEIR SECOND CLAIM FOR RELIEF

5

   SINCE CHASE HAS VIOLATED RESPA RULES AND PROCEDURES

   REGARDING EVALUATING PLAINTIFFS FOR LOSS MITIGATION

6

   OPTIONS ............................................................................................ 10

7

     A.  Under RESPA Chase had Obligations as Soon as Plaintiffs Submitted an

       Application…………………………………………….......11

8

     B.  If Plaintiffs' Application was Incomplete, CHASE had a Duty to Inform

9

       Plaintiffs within Five Days of Plaintiffs Applying…………12

     C.  CHASE had a Duty to Inform Plaintiffs When Their Application was

10

       Complete and Evaluate Plaintiffs Application Within Thirty

       Days…………………………………………………………………12

11

     D.  When CHASE Failed to Timely Evaluate Plaintiffs, Plaintiffs' were

12

       Damaged .......................................................................................15

13

   **B.**  PLAINTIFFS PLEADINGS SUFFCENTLY DEMONSTRATE THAT

14

   CHASE WAS NEGLIGENT IN THE SERVICING OF PLAINTIFFS'

   APPLICATION FOR LOAN MODIFICATION………………………………16

15

16

     1. California law imposes a presumption of a duty of care, unless an exception

     applies. …………………………………………..................................16

17

     2. CHASE breached its duty to Plaintiffs by not properly handling their

18

     application for loan modification…………………………………21

19

     3. The Plaintiffs suffered damages when CHASE failed to properly handle

     their application for loan modification…………………………21

20

   **C.**  PLAINTIFFS PLEADINGS SUFFCENTLY DEMONSTRATE THAT

21

   CHASE WAS IN VIOLATION OF 17200…………………………………22

     A.  Plaintiffs Have Standing to Bring a Section 17200 Claim……..22

22

     B.  Plaintiffs Can Demonstrate a Claim for Unlawful Business Practices.

       ……………………………………………………………23

23

     C.  Plaintiffs Can Demonstrate a Claim for Unfair Business Practices.

24

       ……………………………………………………………23

25

   IV. CONCLUSION…………………………………………………………24

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK, NATIONAL ASSOCIATION'S
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

# TABLE OF AUTHORITIES

*Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 2014 WL 3883282 at 10-13 (Aug. 7, 2014) ............................................................................ 16

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) .......................................................................... 9

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) ........................... 9

*Bell Atlantic Corp. v. Twombly*,  550 U.S. 544 (2007) ....................................................... 9

*Bell Atlantic Corp. v. Twombly,* 550 U. S. 544 (2009) ....................................................... 9

Bell Atlantic Corp. v. Twombly, 550 US 544, 556 (2007) ................................................. 5

Biakanja v. Irving 49 Cal.2d 647, 650 (1958 ................................................................. 18

*Conley v. Gibson,* 355 U.S. 41, 45-46 (1957) ................................................................... 8

*Davis v. Scheuer*, 468 U.S. 183 (1984) .............................................................................. 9

*Doe v. United States,* 419 F.3d 1058, 1062 ..................................................................... 13

*Doe v. United States,* 419 F.3d 1058, 1062 (9th Cir. 2005) ....................................... 8, 14

*Enesco Corp. v. Price/ Costco, Inc.,* 146 F.3d 1083, 1085 (9th Cir. 1998) ..................... 8

*Erickson v. Pardus*, 551 U.S. 89 (2007) ........................................................................... 9

Garcia v. Ocwen Loan Servicing, LLC, 2010 WL 1881098, (May 10, 2010) ................................................................................................................... 18

*Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997) ................................... 8

*Houle v. Green Tree Servicing*, 2015 WL 1867526, at *3 (E.D. Mich. Apr. 23, 2015) .............................................................................................................. 11

*Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006) ....................................................................................................................... 15

*J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 806 (1979) .................................................... 16

*Jolley,* 213 Cal. App. 4th at 903 ............................................................................... 17, 20

Lueras v. BAC Home Loans Servicing, LP, supra, 221 Cal.App.4th at pp. 64–65, 163 Cal.Rptr.3d 804 ........................................................................... 18

*McGarvey v. JP Morgan Chase Bank, N.A.*, 2013 WL 5597148, at *8-9 (E.D. Cal. Oct. 11, 2013) ....................................................................................... 23

*Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991) ........................................................................................................................ 17

PAE Government Services, Inc. v. MPRI, Inc., 514 F3d 856, 860 (9th Cir. 2007) ................................................................................................................. 5

*People v. Casa Blanca Convalescent Homes, Inc.,* (1984) 159 Cal. App. 4th 509, 530, abrogated on other grounds in Cel-Tech, 83 Cal. Rptr. 2d at 565 & n.12 ...................................................................................................... 23

*Podolsky v. First Healthcare Corp.* (1996) 50 Cal.App.4th 632, 647 ............................. 22

Reg. X, 12 C.F.R. § 1024.41 ............................................................................................ 13

*Rothman v. US Bank*, 2014 WL 4966907 (N.D. Cal. Oct. 3, 2014) ................................ 15

*Rubio v. Capital One Bank*, 613 F.3d 1195, 1203-04 (9th Cir. 2010) ........................... 22

*Scheuer v. Rhodes*, 416 U.S. 232,236 (1974) .................................................................... 9

PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK, NATIONAL ASSOCIATION'S
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

*Shapiro v. Sage Point Lender Servs.,* 2014 WL 5419721 (C.D. Cal. Oct. 24, 2014)...........................................................................................13

Starr v. Baca 652 F. 3d 1202, 1216 (2011)................................................5

*Turner v. Ocwen Loan Servicing, LLC,* 2014 WL 6886054 (S.D. Cal. Dec 03, 2014)..................................................................................15

*Valdez v. Taylor Auto. Co.* (1954) 129 Cal. App. 2d 810, 817 ................16

*Weirum v. RKO General, Inc.,* 15 Cal. 3d 40, 46 (1975).........................16

*Wenegieme v. Bayview Loan Servicing,* 2015 WL 2151822 (S.D. N.Y. May 07, 2015) .........................................................................11

## FEDERAL STATUTES AND RULES

**REGULATION X, 12 C.F.R. § 1024.41(A) ....................................... 11**

12 C.F.R. § 1024.41 .................................................................. 11

Reg. X, 12 C.F.R. § 1024.41(b)(1) ........................................... 11, 12

Reg. X, 12 C.F.R. § 1024.41(b)(2) ........................................... 11

Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(A) .................................. 12

Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(B) .................................. 12

12 C.F.R. § 1024.41(c)(1)(i) ..................................................... 15

Reg. X, 12 C.F.R. § 1024.41(c)(2)(ii) ...................................... 14

§ 1024.41, 78 Fed. Reg. 10,818 (Feb. 14, 2013) ..................... 11

§ 1024.41(b), 78 Fed. Reg. 10,825............................................ 11

12 U.S.C. § 2605(f)................................................................... 11

Rule 12(b)(6)............................................................................. 8

## STATE STATUTES AND RULES

Cal. Bus. & Prof. Code § 17200 (2009)……………………………….............................................21, 23

Cal. Civ. Code § 1714. Section 1714............................................ 16

# I. INTRODUCTION AND BACKGROUND

Plaintiffs GILBERTO F. GUILLERMO and LILLIAN S. CORTES (hereinafter collectively known as "Plaintiffs") own the property located at 3635 Cesar Chavez, San Francisco, CA 94110 (the "Property"). In 2012, defendant JP Morgan Chase Bank (hereinafter "CHASE") became the Plaintiffs' mortgage service provider pursuant to a transfer of the Loan and Deed of Trust from the prior mortgage holder. On or about May 2012, Plaintiff Cortes lost her job and Plaintiffs became unable to pay their mortgage on time. (SAC, ¶14) In March 2013, the Plaintiffs filed a completed loan modification application with CHASE. CHASE denied the application for loan modification on the grounds of insufficient income. The Plaintiffs defaulted on their loan and CHASE initiated foreclosure proceedings. [1] (SAC, ¶20)  n a letter dated January 25, 2014, Plaintiffs received written confirmation of receipt of Plaintiffs' loan modification application from CHASE. The letter did not indicate if Plaintiffs needed to send additional documents. (SAC, ¶21)

From approximately January 2014 through April 2014, the Plaintiffs did not receive any communication from CHASE. (SAC, ¶22) CHASE failed to return several of Plaintiffs' calls inquiring into the status of their loan modification. (SAC, ¶22)

On April 16, 2014, CHASE sent Plaintiffs a notice that as of May 1, 2014, defendant CALIBER would begin servicing their loan. (SAC, ¶23) In regards to

---

[1] The Movant argues that Plaintiffs made statements in their original complaint that they did not make in their amended complaint. The facts in the amended complaint are not contradictory facts, but in fact revised to reflect more accurate information.  The Court should accept as true the material factual allegations contained in the current amended complaint pursuant to Rule 12(b)(6) and *Bell Atlantic Corp. v. Twombly,* 550 US 544, 556 (2007); *Starr v. Baca* 652 F. 3d 1202, 1216 (2011).  Even if, however, this Court finds that the amended complaint is contradictory to previous complaints, "[t]he Ninth Circuit, and other courts . . .have held that nothing in the Federal Rules prevents a party from filing successive pleadings with inconsistent or even contradictory allegations. 'Unless there is a showing that the party acted in bad faith—a showing that can only be made after the party is given an opportunity to respond under the procedures of Rule 11—inconsistent allegations are simply not a basis for striking the pleading.' " *PAE Government Services, Inc. v. MPRI, Inc.,* 514 F.3d 856, 860 (9th Cir. 2007).

PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK, NATIONAL ASSOCIATION'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

1   their loan modification application, CHASE did not request bank statements and

2   other information needed to process the application until after notifying them of the

3   servicer change and less than two weeks before the change in servicing.(SAC, ¶24)

4   In good faith, Plaintiffs responded even though CHASE only gave them four days to

5   do so. (SAC, ¶25) On April 30, 2014, just two days before CHASE transferred

6   Plaintiffs application for loan modification, CHASE assigned Plaintiffs a Customer

7   Assistance Specialist named Ms. Lopez. (SAC, ¶26) Thereafter, Plaintiffs called Ms.

8   Lopez regarding the status of their application, but Ms. Lopez did not return their

9   calls. (SAC, ¶27)

10          On May 01, 2014, CALIBER began servicing Plaintiffs loan. On May 12,

11  2014, CALIBER sent a letter to Plaintiffs informing them that Mr. Edgar Correa

12  had been assigned as their Single Point of Contact (SPOC). (SAC, ¶31) Under

13  Section 2923.7 of California's Homeowner Bill of Rights (HBOR), a SPOC must be

14  assigned to a borrower that has submitted a loan modification application. (SAC,

15  ¶31) Thus, on information and belief, CALIBER was aware that Plaintiffs had a

16  pending loan modification application with CHASE, which is why CALIBER

17  assigned a SPOC to assist Plaintiffs with their modification application. (SAC, ¶31)

18  As further evidence, Mr. Correa remained the SPOC throughout Plaintiffs'

19  modification review with CALIBER. (SAC, ¶31)

20          On May 29, 2014, CALIBER recorded a Notice of Trustee Sale ("NOS") with a

21  sale date of June 19, 2014.  This was recorded even though Plaintiffs had a pending,

22  completed loan modification application with CHASE. (SAC, ¶32)

23          On May 31, 2014, Plaintiffs received a copy of the NOS. (SAC, ¶33) Plaintiffs

24  attempted to contact their SPOC several times but were unable to get a hold of him.

25  CALIBER repeatedly informed Plaintiffs that it was unaware that Plaintiffs had a

26  pending loan modification application under review with CHASE. (SAC, ¶33, 35).

27  During one of the calls, on June 2, 2014, CALIBER informed Plaintiffs that they

28

-6-

1    qualified for a Making Homes Affordable Modification, which would be a 40-year

2    loan beginning with a 2% interest rate. (SAC, ¶35). This modification would save

3    Plaintiffs thousands of dollars a year. During a phone call with CALIBER on June

4    3, 2014, CALIBER declined to obtain the loan modification application documents

5    from CHASE. CALIBER insisted that Plaintiffs reapply.  (SAC, ¶36)

6        On June 9, 2014, just ten days before Plaintiffs home was to be sold,

7    Plaintiffs, who were distressed and in need of assistance, met with a non-profit

8    representative who conducted a conference call with CALIBER. (SAC, ¶38) During

9    the call CALIBER representative Torie stated that Plaintiffs had an open loan

10    modification "workout" with CHASE, which was in CALIBER's system. (SAC, ¶38)

11    This is the first time anyone acknowledged to Plaintiffs that CALIBER had their

12    loan modification application from CHASE. (SAC, ¶38) In response to this

13    information, the non-profit escalated Plaintiffs case to the Treasury Department

14    office of "HAMP Escalations". HAMP Escalations is a conduit between borrowers

15    and servicers when borrowers claim the servicers are not properly reviewing them

16    for a HAMP loan modification. (SAC, ¶38) The non-profit stated in its complaint to

17    HAMP Escalation that "borrower was in review for HAMP during the time of

18    service transfer and new servicer shows workout is open but continues with

19    foreclosure sale 6/19/14. Borrower seeks HAMP review for modification." (SAC, ¶38)

20        On or around June 10, 2014 Plaintiffs submitted a complete loan modification

21    application to CALIBER. (SAC, ¶39)

22        On June 16, 2014, the non-profit received notice from HAMP Escalations that

23    based on the non-profits escalation the foreclosure sale was postponed to allow for a

24    review of the modification. (SAC, ¶40)

25        On or around June 16, 2014, Plaintiffs received two letters from CALIBER.

26    (SAC, ¶41) The first one confirmed that "[a]dditional document(s) have been

27    received and now your package is considered complete and ready for the next stage

28

-7-

review by our underwriting team.(SAC, ¶41) We will review all documentation submitted to evaluate your eligibility, and make a decision within 30 days of the date of this letter."  (SAC, ¶41) The second letter from CALIBER stated that their loan modification was being reviewed and that Plaintiffs' eligibility would be determined within 30 days.  (SAC, ¶41)

Shortly thereafter, Plaintiffs called CALIBER and spoke to representative Oscar, who informed them that Defendant requires additional documents to process the application for loan modification. Thus, Plaintiffs received contradictory messages regarding whether or not their modification application was complete. However, Plaintiffs submitted the additional documents. (SAC, ¶42)

On June 25, 2014, Plaintiffs spoke with CALIBER representative Gregory, who informed them that CALIBER's records showed Plaintiffs were in the process of a modification with CHASE. (SAC, ¶44)

On or around July16, 2014, Plaintiffs received another letter from CALIBER that again confirmed that their new loan modification application was being reviewed and that Plaintiffs' eligibility would be determined within 30 days (presumably from this new date).  (SAC, ¶45)

To date CALIBER has not made a decision regarding Plaintiffs' loan modification application. (SAC, ¶46)

## II.   STANDARD OF REVIEW

Motions to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure are viewed with disfavor and, accordingly, dismissals for failure to state a claim are "rarely granted."  *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted).  In deciding a motion to dismiss, the court must accept as true the allegations of the complaint and draw reasonable inferences in favor of the plaintiff. *Doe v. United States,* 419 F.3d 1058, 1062 (9th Cir. 2005).  Inquiry into the adequacy of the evidence is improper. *Enesco*

-8-

1  *Corp. v. Price/ Costco, Inc.,* 146 F.3d 1083, 1085 (9th Cir. 1998).  A court may not

2  dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no

3  set of facts in support of his claims which would entitle him to relief." *Conley v.*

4  *Gibson,* 355 U.S. 41, 45-46 (1957).

5       Plaintiffs submit that the motion to dismiss should be denied because the

6  standard of review is whether the facts, as alleged, support *any* valid claim entitling

7  Plaintiffs to relief . . . not necessarily the one intended by Plaintiff.  *Ashcroft v.*

8  *Iqbal*, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*,  550 U.S. 544 (2007)

9  (emphasis added). The question presented by a motion to dismiss is not whether the

10 Plaintiff will prevail in the action, but whether the Plaintiff is entitled to offer

11 evidence in support of the claim. *Scheuer v. Rhodes*, 416 U.S. 232,236 (1974)

12 overruled on other grounds by *Davis v. Scheuer*, 468 U.S. 183 (1984).

13      *Iqbal* and *Twombly* prescribe a two-step process for evaluation of motions to

14 dismiss.  The court first identifies the non-conclusory factual allegations, and the

15 court then determines whether these allegations, taken as true and construed in the

16 light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief."

17 *Id.*; *Erickson v. Pardus*, 551 U.S. 89 (2007).

18      "Plausibility," as it is used in *Twombly* and *Iqbal*, does not refer to the

19 likelihood that a pleader will succeed in proving the allegations. Instead, it refers to

20 whether the non-conclusory factual allegations, when assumed to be true, "allow . . .

21 the court to draw the reasonable inference that the defendant is liable for the

22 misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.  "The plausibility standard is not

23 akin to a 'probability requirement,' but it asks for more than a sheer possibility that

24 a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).  A

25 complaint may fail to show a right to relief either by lacking a cognizable legal

26 theory or by lacking sufficient facts alleged under a cognizable legal theory.

27 *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

28

1

<u>UNDER *IQBAL* AND *TWOMBLY*, PLAINTIFFS HAVE STATED</u>
<u>SUFFICIENT FACTS TO SUPPORT EACH CAUSE OF ACTION</u>

2

3

The Plaintiffs have provided sufficient factual evidence to meet the

4

plausibility requirements of Iqbal and Twombly. The Defendant has not met its

5

burden to analyze the requirements of each claim and to show that even if the facts

6

were taken as true and in a light most favorable to Plaintiffs, the Plaintiff's could

7

not prevail. Rather, the Defendant has supported its motion to dismiss with various

misstatements of law, and accordingly, the motion should be DENIED.

8

### III.   LEGAL ARGUMENT

9

10

A. **PLAINTIFFS ADEQUATELY PLED THEIR SECOND CLAIM FOR RELIEF SINCE CHASE HAS VIOLATED RESPA RULES AND PROCEDURES REGARDING EVALUATING PLAINTIFFS FOR LOSS MITIGATION OPTIONS**

11

12

13

Plaintiffs applied for a loan modification on January 24, 2014. CHASE

14

acknowledged receiving Plaintiffs' application in a letter dated January 25, 2014. In

15

the letter CHASE did not state if Plaintiffs' application was complete or incomplete.

16

CHASE then sat on the modification for over three months and did not return

17

Plaintiffs numerous calls or inquiries regarding the status of their modification. In

18

April, two weeks before CHASE transferred the servicing of Plaintiffs' loan to

19

CALIBER, CHASE requested additional documentation. Two days before the

20

transfer of servicing CHASE finally appointed a single point of contact to Plaintiffs.

21

Now CHASE asks this Court for blanket immunity based upon the fact that

22

Plaintiffs "application could not have been complete until later April 2014 at the

23

earliest, during which time the servicing of the loan was being transferred to

24

Caliber." (MTD, 4:9-10) In other words, CHASE is acknowledging that they had

25

Plaintiffs modification for nearly three months before requesting additional

26

documentation. CHASE is asking this Court to find that during those three months

27

when CHASE sat on the modification, and did not request additional information,

28

-10-

that Plaintiffs had no protections under RESPA. However, this is not the law.

### A. Under RESPA Chase had Obligations as Soon as Plaintiffs Submitted an Application

On January 10, 2014 new regulations implementing RESPA , issued by the Consumer Financial Protection Bureau ("CFPB"), went into effect concerning loss mitigation procedures.  The loss mitigation regulation mandates a procedural framework within which the evaluation of loss mitigation options must take place. (Regulation X, 12 C.F.R. § 1024.41(a).  *See* Section-by-Section Analysis, § 1024.41, 78 Fed. Reg. 10,818 (Feb. 14, 2013)). Section 1024.41(a) makes clear that RESPA's private remedies under 12 U.S.C. § 2605(f) are available to borrowers to enforce the procedural requirements in 12 C.F.R. § 1024.41.  *Wenegieme v. Bayview Loan Servicing*, 2015 WL 2151822 (S.D. N.Y. May 07, 2015) (finding that § 1024.41(a) allows a borrower to enforce § 1024.41(f)'s prohibition on dual tracking under 12 U.S.C. § 2605(f)); *Houle v. Green Tree Servicing*, 2015 WL 1867526, at *3 (E.D. Mich. Apr. 23, 2015) ("Borrowers have a private right of action against lenders who evaluate a loss mitigation application while at the same time pursuing foreclosure.")

Under RESPA certain specific obligations are imposed upon the servicer the moment the borrower acts in a manner that can reasonably be construed as the submission of an "application."  Section 1024.41 imposes overlapping duties on a servicer once it receives a borrower's application for loss mitigation review.  The term "application" is to be construed "expansively" and can even be verbal. (*See also* Section-by-Section Analysis, § 1024.41(b), 78 Fed. Reg. 10,825 (Feb. 14, 2013)).

The most significant protections under the rule are afforded to the borrower upon submission of a complete application.  A "complete loss mitigation application" is defined as "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." (Reg. X, 12 C.F.R. § 1024.41(b)(1)).

-11-

**B. If Plaintiffs' Application was Incomplete, CHASE had a Duty to Inform Plaintiffs within Five Days of Plaintiffs Applying**

A servicer has a duty to respond to an application whether or not it is complete.   (Reg. X, 12 C.F.R. § 1024.41(b)(2)). When initially made aware of a communication that can reasonably be deemed to be an application for loss mitigation, the servicer must promptly conduct a review to determine whether the communication represents a complete or an incomplete application. (Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(A)). If the servicer deems the application to be "incomplete" for any reason, the regulation requires two actions by the servicer.  First, the servicer must act affirmatively to complete the application.  The servicer must exercise "reasonable diligence" to obtain any documents and information it claims to require to complete the application. (Reg. X, 12 C.F.R. § 1024.41(b)(1)). Second, the regulation mandates that the servicer provide a written notice to the borrower describing the documents and information needed to complete the application. (Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(B)). The servicer must send the notice within five business days of receipt of an application it deems incomplete. (Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(B)).

**C. CHASE had a Duty to Inform Plaintiffs When Their Application was Complete and Evaluate Plaintiffs Application Within Thirty Days**

If the servicer determines that the application is complete, it must send the borrower a notice acknowledging that the application is complete within five business days of receipt of the application. (Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(B)). Further, the servicer's immediate responsibility upon receipt of a complete loss mitigation application is to evaluate it.  The evaluation of the borrower for all loss mitigation options must be completed within thirty days of receipt of a complete application.  (Reg. X, 12 C.F.R. § 1024.41(c)(1)(i)).

In the present case, Plaintiffs allege in their First Amended Complaint that

-12-

they sent CHASE a complete loan modification application on or around January 24, 2014. (SAC, ¶20) Plaintiffs were told by a representative what documents to send, which are also listed online at CHASE'S website as part of the requirements under HBOR for all to review. Plaintiffs gathered and sent those documents. CHASE did not request any additional information or documents within five business days of receipt of Plaintiffs' application. Accepting as true the allegations of the complaint and drawing a reasonable inference in favor of the Plaintiffs their application was complete as of January 24, 2014. (*Doe v. United States,* 419 F.3d 1058, 1062)

CHASE acknowledged receiving the application in a letter dated January 25, 2014. However, CHASE did not include in the letter if the application was: 1) complete; or 2) incomplete. This is in violation of Reg. X, 12 C.F.R. § 1024.41. Instead CHASE sat on the application, did not return Plaintiffs calls inquiring about the application, and waited nearly three months to request additional documentation.

CHASE argues in their Motion to Dismiss that since Plaintiffs faxed "bank statements" to CHASE it demonstrates that Plaintiff's application was incomplete. (MTD, 4:7-10) However, the mere request of supplemental documents, such as the updated bank statements, does not deem the original application incomplete.  In a recent case with similar facts a servicer tried to argue that Plaintiffs loan modification was not complete since the servicer requested supplemental documents. *Shapiro v. Sage Point Lender Servs.,* 2014 WL 5419721 (C.D. Cal. Oct. 24, 2014). Therefore, the servicer argued the Plaintiffs had no dual tracking protections.  The court stated: "[t]his argument borders on absurd…Defendant's argument would render HBOR's protections meaningless. Mortgage servicers could deny every application for a loan modification, citing missing documents as an excuse. Even better, the servicer would not have to identify which documents were

missing. The California legislature could not have intended to allow the rigged game that Defendant's argument suggests." *Id.* at 5. Similarly, the CFPB could not, and did not, intend to allow the rigged game as CHASE suggests in the MTD, which is why the CFPB put a time limit on when a servicer needs to request additional documents, which is five days. In addition, whether and at what time the application was complete is a factual issue and cannot be decided at the motion to dismiss stage.

Moreover, because CHASE did not request any additional information or documents within five business days of receipt of Plaintiffs' application, this Court can reasonably conclude that CHASE made a determination that the Plaintiffs' application was complete in January, 2014.  Under Regulation X, borrowers do not lose protections under the loss mitigation regulation if a servicer, after receiving a complete application, later determines that additional information or documents are needed.  If a servicer later discovers that it incorrectly concluded that the application was complete, that more information is needed, or that corrections are required to be made to previously submitted documents, the servicer may request the missing information or corrected documents.  However, the servicer (and any transferee servicer such as Caliber) must treat the application as complete based on the time when it was initially complete for purposes of the loss mitigation requirements, including the dual tracking protections in Reg. X, 12 C.F.R. §§ 1024.41(f)(2) and 1024.41(g) until the borrower is given a reasonable opportunity to complete the application.  (Reg. X, 12 C.F.R. § 1024.41(c)(2)(ii)).  Thus, the request by CHASE for supplemental documents does not prove that the application was incomplete at some earlier period, or that CHASE was not obligated to comply with Reg. X, 12 C.F.R. § 1024.41 before the bank statements were requested.

Next, CHASE did not evaluate Plaintiffs for loss mitigation options, including a loan modification, within 30 days of receiving the application in violation of Reg.

-14-

X, 12 C.F.R. § 1024.41(c)(1)(i). If the application was complete as of January 25, 2014 CHASE was obligated to make a decision by February 26, 2015. Arguably Plaintiffs qualified for a loan modification, as Plaintiffs were told by CALIBER on June 2, 2014 that they qualified for a HAMP modification.

### D. When CHASE Failed to Timely Evaluate Plaintiffs, Plaintiffs' were Damaged

A plaintiff claiming a RESPA violation must allege not only a breach of a duty required to be performed under RESPA, but must also show that the breach caused him to suffer damages. *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006) (citing 12 U.S.C. § 2605(f)(1)(A) ("Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure . . . [for] any actual damages to the borrower as a result of the failure . . . . ")). Actual damages include a loss for time spent away from work while preparing correspondence to the loan servicer. *Cortez v. Keystone Bank, Inc.*, No. Civ.A.98-2457, 2000 WL 536666, at *12 (E.D. Pa. May 2, 2000). Plaintiffs allege in their complaint that they lost wages from taking time off of work to correspond with CHASE. (SAC, ¶86)

The Plaintiffs have also alleged that after the transfer of servicing from Chase to Caliber, they were  charged fees for the filing and postponing of the NOS. If Chase had timely evaluated Plaintiff's' complete loss mitigation application in accordance with 12 C.F.R. § 1024.41(c)(1)(i), the Plaintiffs would not have been charged these fees.  Actual damages can include being charged additional interest, late fees, and foreclosure costs as a result of a servicer's RESPA violations. *Turner v. Ocwen Loan Servicing, LLC*, 2014 WL 6886054 (S.D. Cal. Dec 03, 2014) (alleging overcharges and late fees resulting from misapplication of payments under forbearance agreement).

Plaintiffs' credit was also damaged. Plaintiffs concede that they were at fault for originally not making mortgage payments. However this fault ends as of

February 26, 2014, the time when CHASE was obligated to evaluate Plaintiffs, and offer Plaintiffs a modification since Plaintiffs in fact were eligible for a loan modification, as demonstrated by CALIBER's statement. This sufficiently constitutes damages under RESPA. *Rothman v. US Bank*, 2014 WL 4966907 (N.D. Cal. Oct. 3, 2014). (Borrower alleged servicers refusal to provide accurate account information worsened his already damaged credit, which he acknowledged was originally damaged by his own default. Since injury to a credit score constitutes damages under RESPA, he adequately acknowledged damages.) They have been damaged. The court should therefore find that Plaintiffs have stated a claim and that the motion to dismiss Plaintiff's RESPA claim should be denied.

**B. PLAINTIFFS PLEADINGS SUFFICENTLY DEMONSTRATE THAT CHASE WAS NEGLIGENT IN THE SERVICING OF PLAINTIFFS' APPLICATION FOR LOAN MODIFICATION.**

A negligence cause of action requires: 1. defendant's legal duty of care to plaintiffs; 2. breach of that duty by negligent act or omission; 3. injury proximately caused by breach of that duty; and 4. resulting compensable damages. *Id.*; *Valdez v. Taylor Auto. Co.* (1954) 129 Cal. App. 2d 810, 817.

**1. California law imposes a presumption of a duty of care, unless an exception applies.**

The basic principle of tort liability is that a person is responsible for injuries as a result of their lack of care. The California Supreme Court held that "[w]hile the question whether one owes a duty to another must be decided on a case-by-case basis, every case is governed by the rule of general application that all persons are required to use ordinary care to prevent others from being injured as the result of their conduct." *Weirum v. RKO General, Inc.*, 15 Cal. 3d 40, 46 (1975). This holding is consistent with section 1714 of the Civil Code, which provides: "[e]very one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person. . . ." Cal. Civ. Code § 1714. Section 1714 "does not distinguish

1    among injuries to one's person, one's property or one's financial interests." *J'Aire*

2    *Corp. v. Gregory*, 24 Cal. 3d 799, 806 (1979). A lender owes a borrower a duty of care

3    in negotiating or processing an application for loan modification. *Alvarez v. BAC*

4    *Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 2014 WL 3883282 at 10-13

5    (Aug. 7, 2014). The *Alvarez* opinion held that a servicer owes a duty to exercise

6    reasonable care in the processing of a loan modification application *once a servicer*

7    *agrees to consider a modification of borrowers' loans. (Italics added)*

8          Plaintiffs argue that CHASE had a duty of care and breached its duty by not

9    timely processing Plaintiffs' completed home loan modification application. (SAC,

10   ¶98). CHASE mishandled their documents by not timely making a determination as

11   to whether or not plaintiffs qualified for a loan modification. If, as CHASE argues,

12   Plaintiffs did not submit a complete loan modification application, CHASE had a

13   duty to inform plaintiffs of what documents were missing within five days of

14   receiving the application and to give plaintiffs an opportunity to provide those

15   documents.

16         Defendant argues that it is not liable for negligence. First, Defendant argues,

17   in substance, that "[a]s a general rule, a lender does not owe a borrower a duty of

18   care when it engages in arm's length transactions with borrowers." *See Nymark v.*

19   *Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991); (MTD 5:23-25.)

20   However, California law is now well-settled against blind reliance on the general

21   rule stated in *Nymark* and supports upholding negligence claims in the mortgage

22   servicing context, particularly in light of the changing relationship between modern

23   mortgage servicers and their customers. *See Jolley,* 213 Cal. App. 4th at 903. The

24   *Jolley* court cautioned that "courts should not rely mechanically on the "general

25   rule" that lenders owe no duty of care to their borrowers." *Id.* [2]

26

27   _____

     [2] *Nymark* does not support the sweeping conclusion that a lender never owes a duty of care to a
     borrower. Rather, the *Nymark* court itself explained that the question of whether a lender owes such

28   a duty requires 'the balancing of [the "*Biakanja* factors"].'")

                                        -17-

Further, in the recent Court of Appeal case, *Alvarez v. BAC Home Loans Servicing*, the court found that, though a servicer is not obligated to initiate the modification process or to offer a modification, once it agrees to engage in the process with the borrower, it owes a duty of care not to mishandle the application or negligently conduct the modification process. The court in *Alvarez* discussed the *Lueras* case stating, "[t]he opinion in *Lueras* cited numerous federal district court opinions that conclude a lender owes no duty of care to a borrower to modify a loan. (*Lueras v. BAC Home Loans Servicing, LP, supra,* 221 Cal.App.4th at pp. 64–65, 163 Cal.Rptr.3d 804.) The court also cited other district court decisions recognizing that a lender owes a borrower a duty of care in negotiating or processing an application for a loan modification. (*Id.* at pp. 64–65, 163 Cal.Rptr.3d 804.)

The court in *Alvarez* found the decision in *Garcia v. Ocwen Loan Servicing, LLC,* 2010 WL 1881098, (May 10, 2010), representative of those cases that have found that the *Biakanja* factors weigh in favor of imposing a duty of care on a lender that undertakes to review a loan for potential modification. The *Biakanja* factors were developed in the case of *Biakanja v. Irving* 49 Cal.2d 647, 650 (1958). The factors are: [1] the extent to which the transaction was intended to affect the Plaintiffs, [2] the foreseeability of harm to him, [3] the degree of certainty that the Plaintiffs suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

Applying the *Biakanja* factors to the present case:

1. *The Extent to which the Transaction was Intended to Affect the Plaintiffs:* Here, the acceptance of borrower's loan modification applications and the agreement to process and consider those applications was unquestionably intended to affect Plaintiffs. Indeed, the central goal of a loan modification is to allow Plaintiffs to remain in

-18-

their home with an affordable mortgage payment. Thus, to the extent
that CHASE undertook an assessment of Plaintiffs' modification
applications, they did so for the benefit of Plaintiffs.

2.  *Foreseeability of Harm to the Homeowner.* The harm that can come to
Plaintiffs from CHASE's mishandling their loan modification application
is very predictable. *See Garcia*, 2010 WL 1881098, at *3 ("Although
there was no guarantee the modification would be granted had the loan
been properly processed, the mishandling of the documents deprived
Plaintiff of the possibility of obtaining the requested relief."). Any
extended delay in processing Plaintiffs' application and CALIBER's
action in filing the Notice of Sale causes predictable harm, such as added
interest from the Plaintiffs falling further behind on their mortgage,
unnecessary default-related fees that can eat up any remaining equity in
Plaintiffs' home, and making other means of avoiding foreclosure (such
as short sale or repayment through Chapter 13 bankruptcy) more
difficult. Because CHASE and CALIBER continues to negatively report
the claimant's credit, even while they process modification applications,
the resulting damage to Plaintiff's credit during months of delay can
make it harder for Plaintiffs to recover financially even if their
mortgages are ultimately modified.

3.  *The Degree of Certainty That the Plaintiff Suffered Injury.* The types of
injury that Plaintiffs are suffering are predictable and easy to measure:
potential foreclosure as well as accumulated interest and fees. *See
Garcia*, 2010 WL 1881098, at *3.

4.  *The Closeness of the Connection between the Defendant's Conduct and
the Injury Suffered.* The connection in the modification context is close.
Plaintiffs injury is strongly related to CHASE's conduct "because, to the

-19-

extent Plaintiffs otherwise qualified and would have been granted a modification, Defendant's conduct … precluded the loan modification application from being timely processed." *Garcia*, 2010 WL 1881098, at *3. Even if Plaintiffs didn't qualify, they may be able to show they missed a different opportunity to save the home (for instance, through bankruptcy protection).

5.  *The Moral Blame Attached to the Defendant's Conduct.* Plaintiffs had no control over whether or not CHASE properly processed their loan modification. It is highly relevant that the borrowers' "ability to protect his own interests in the loan modification process [is] practically nil" and the bank holds "all the cards." *Alvarez*, 2014 WL 3883282, at *11 (quoting *Jolley*, 213 Cal. App. 4th at 900). Where a mortgage servicer fails to properly review a homeowner's request for assistance, as here, and that failure leads to predictable harm such as continued foreclosure activity and potential loss of the family home, the conduct is blameworthy.

6.  *The Policy of Preventing Future Harm.* Here, there is a policy of preventing future harm, which applies to Plaintiffs even though they originally fell behind on their mortgage payments. As the *Garcia* court found, recent state and federal legislation—including the Making Home Affordable Program and the new RESPA requirements—demonstrate a public policy of "preventing future harm to home loan borrowers" that favored allowing the claim to proceed. *Garcia*, 2010 WL 1881098, at *3. Further, as noted in *Jolley*, "the California Legislature has expressed a strong preference for fostering more cooperative relations between lenders and borrowers who are at risk of foreclosure, so that homes will not be lost." 213 Cal. App. 4th at 903. HBOR, which became effective

-20-

January 1, 2013, demonstrates "a rising trend to require lenders to deal reasonably with borrowers in default to try to effectuate a workable loan modification." *Alvarez*, 2014 WL 3883282, at *12; *Jolley*, 213 Cal. App. 4th at 903.

Thus, CHASE owed a duty of care to Plaintiffs.

**2. CHASE breached its duty to Plaintiffs by not properly handling their application for loan modification.**

Among things, CHASE failed to notify Plaintiffs if their loan modification was complete or incomplete. If it was incomplete, CHASE had a legal duty to inform Plaintiffs of what documents were needed to make it complete and to give Plaintiffs an opportunity to supply those documents.  If the application was complete, or at some point became complete, CHASE had a legal duty to evaluate Plaintiffs' application and notify them within 30 days of whether or not they qualified for a loan modification. Here, however, CHASE did not follow these requirements, which resulted in injury to Plaintiffs. CHASE's conduct was the cause-in-fact and the proximate cause of Plaintiffs' injury, which was foreseeable to CHASE.

**3. The Plaintiffs suffered damages when CHASE failed to properly handle their application for loan modification.**

The last element of negligence is damages. The court in *Alvarez* discussed damages and found allowed damages to be the damage to title, "deterrence from seeking other remedies to address their default and/or unaffordable mortgage payments, damage to their credit, additional income tax liability, costs and expenses incurred to prevent or fight foreclosure, and other damages." *Alvarez, at p.* 948-949. In the present case, Plaintiffs damages are to their title and to their credit. In addition, the claimant's have incurred an additional income tax liability and the costs and expenses to prevent and fight the foreclosure.  The court should therefore

PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK, NATIONAL ASSOCIATION'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

find that Plaintiffs have stated a claim and to deny CHASE's motion to dismiss Plaintiffs' negligence claim.

### C. PLAINTIFFS PLEADINGS SUFFICENTLY DEMONSTRATE THAT CHASE WAS IN VIOLATION OF 17200

California's unfair competition statute prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200 (2009). Since Section 17200 is written in the disjunctive, it prohibits three separate types of unfair competition: (1) unlawful acts or practices, (2) unfair acts or practices, and (3) fraudulent acts or practices. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, (1999) 20 Cal. 4th 163, 180. By proscribing "unlawful" acts or practices, "Section 17200 'borrows' violations of other laws and treats them as unlawful practices independently actionable." *Id*. at 179-80. However, a practice is prohibited as "unfair" or "deceptive" even if not "unlawful" and vice versa.'" *Id*. at 180 citing to *Podolsky v. First Healthcare Corp.* (1996) 50 Cal.App.4th 632, 647.

17200.

### A. <u>Plaintiffs Have Standing to Bring a Section 17200 Claim.</u>

In order to have standing under the UCL, a plaintiff must show that he or she has "suffered injury in fact and [] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. This provision requires a plaintiff to sufficiently allege: (1) he or she has "lost 'money or property' sufficient to constitute an 'injury in fact' under Article III of the Constitution" and (2) there is a "causal connection" between the defendant's alleged UCL violation and the plaintiff's injury in fact. *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203-04 (9th Cir. 2010) (citations omitted). Taking the allegations as true, Plaintiffs have lost money when CHASE failed to timely evaluate their loan modification. As per Caliber, Plaintiffs qualified for a loan modification with a 2% interest rate. Arguably they would have qualified with Chase as well. When Chase failed to evaluate Plaintiffs, in violation of RESPA and ECOA, Plaintiffs continued to pay

-22-

1  their 6% interest rate, which resulted in higher amount, thus lost money.[3] In

2  addition, it resulted in continued late fees and continued negative credit reporting.

3  With the increased late fees, and Plaintiffs getting further behind on their

4  payments, it is unclear if Plaintiffs will now qualify for a loan modification. This

5  could lead to lost property.

## B. Plaintiffs Can Demonstrate a Claim for Unlawful Business Practices.

Here, Chase has violated the unlawful prong based upon RESPA, ECOA and

negligence. *See, McGarvey v. JP Morgan Chase Bank, N.A.*, 2013 WL 5597148, at

*8-9 (E.D. Cal. Oct. 11, 2013) (finding a viable negligence claim serves as a basis for

"unlawful" prong UCL claim).  Chase violated RESPA by not timely evaluating

Plaintiffs for a loan modification. Chase also violated ECOA based upon the same

fact.

## C. Plaintiffs Can Demonstrate a Claim for Unfair Business Practices.

When an action is brought by a consumer against the creditor, as is the case

here, a broader definition of the word "unfair" applies than when an action is

between direct competitors. In this context, an "unfair" business practice occurs

"when it offends an established public policy or when the practice is immoral,

unethical, oppressive, unscrupulous or substantially injurious to consumers." *See*

*People v. Casa Blanca Convalescent Homes, Inc.*, (1984) 159 Cal. App. 4th 509, 530,

abrogated on other grounds in Cel-Tech, 83 Cal. Rptr. 2d at 565 & n.12.

Here, Chase has violated the unlawful prong based on a violation of RESPA, ECOA

and negligence. *See, e.g., McGarvey v. JP Morgan Chase Bank, N.A.*, 2013 WL

5597148, at *8-9 (E.D. Cal. Oct. 11, 2013) (finding a viable negligence claim serves

---

[3] Plaintiffs' interest rate was fixed for 5 years to 6% variable. In November 2012 Chase sent Plaintiffs a letter that their interest rate would be reduced. Chase, however, refused to reduce the interest rate because Plaintiffs were in unemployment forbearance program with Chase.  Plaintiffs were told that until they became current their interest rate would not be reduced, despite what was stated in their Deed of Trust.

PLAINTIFFS' OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK, NATIONAL ASSOCIATION'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

as a basis for "unlawful" prong UCL claim). Therefore, Chase's Motion to Dismiss the claim for violation of §17200 should be dismissed.

### IV. CONCLUSION

Plaintiffs pled sufficient facts to support the elements of their claims to entitle them to relief. For all of the foregoing reasons, Plaintiffs request that the Court overrule Defendant's Motion to Dismiss and require that Defendant file its answer.

In the alternative, if the Court finds that the complaint, in whole or in part, does not state a cause of action, but there is a reasonable possibility that the defect can be cured by amendment, leave to amend must be granted. Because Defendant cites no authority to support its argument that leave to amend should be denied under these circumstances, and because none of Plaintiffs' claims are fatally flawed on the face of the pleadings, should the Court grant any portion of Defendant's Motion to Dismiss, Plaintiffs request leave to amend the Complaint to correct any defects found by the Court.

TRN LAW ASSOCIATES


Dated: May 26, 2015          /S/ Tiffany R. Norman
                             Tiffany R. Norman,
                             Attorneys for Plaintiffs GILBERTO F.
                             GUILLERMO
                             And LILLIAN S. CORTES