1  Tiffany R. Norman (SBN 239873)
   TRN LAW ASSOCIATES
2  654 Sacramento Street, Second Floor
   San Francisco, CA 94111
3  Telephone: (415) 823-4566
   Facsimile: (415) 762-5490

4

5  Attorney for Plaintiffs GILBERTO F.
   GUILLERMO and
6  LILLIAN S. CORTES

7              **UNITED STATES DISTRICT COURT**

8            **NORTHERN DISTRICT OF CALIFORNIA**
               **SAN FRANCISCO DIVISION**
9

10

11 GILBERTO F. GUILLERMO and          CASE NO. 4:14-CV-04212-JSW
   LILLIAN S. CORTES,
12
            Plaintiffs,               PLAINTIFFS' OPPOSITION TO
13                                    DEFENDANT CALIBER HOME LOANS,
       vs.                            INC.'S MOTION TO DISMISS
14                                    PLAINTIFFS' SECOND AMENDED
   JPMORGAN CHASE BANK,               COMPLAINT
15 NATIONAL ASSOCIATION;

16 CALIBER HOME LOANS, INC.           Date:   July 31, 2015
      a California Corporation;       Time:   9:00 a.m.
17                                    Place:  Courtroom 5, 2nd Floor
   and                               Judge: Hon. Jeffrey S. White
18
   DOES 1-25, inclusive;
19
            Defendants.
20

21

22        Plaintiffs hereby file their opposition to Defendant's Motion to Dismiss as

23 follows:

24              **I. INTRODUCTION AND BACKGROUND**

25        Plaintiffs GILBERTO F. GUILLERMO and LILLIAN S. CORTES

26 (hereinafter collectively known as "Plaintiffs") own the property located at 3635

27 Cesar Chavez, San Francisco, CA 94110 (the "Property"). In 2012, defendant JP

28 Morgan CHASE Bank (hereinafter "CHASE") became the Plaintiffs' mortgage

service provider pursuant to a transfer of the Loan and Deed of Trust from the prior mortgage holder. On or about May 2012, Plaintiff Cortes lost her job and Plaintiffs became unable to pay their mortgage on time.  (SAC, ¶14)  In March 2013, the Plaintiffs filed a completed loan modification application with CHASE. CHASE denied the application for loan modification on the grounds of insufficient income. The Plaintiffs defaulted on their loan and CHASE initiated foreclosure proceedings.[1] (SAC, ¶20)  In a letter dated January 25, 2014, Plaintiffs received written confirmation of receipt of Plaintiffs' loan modification application from CHASE. The letter did not indicate if Plaintiffs needed to send additional documents. (SAC, ¶21)

From approximately January 2014 through April 2014, the Plaintiffs did not receive any communication from CHASE. (SAC, ¶22) CHASE failed to return several of Plaintiffs' calls inquiring into the status of their loan modification. (SAC, ¶22). Subsequently, on April 16, 2014, CHASE sent Plaintiffs a notice that as of May 1, 2014, defendant CALIBER would begin servicing their loan. (SAC, ¶23) In regards to their loan modification application, CHASE did not request bank statements and other information needed to process the application until after notifying them of the servicer change and less than two weeks before the change in servicing. (SAC, ¶24) Plaintiffs responded even though CHASE only gave them four days to do so. (SAC, ¶25) On April 30, 2014, just two days before CHASE transferred Plaintiffs application for loan modification, CHASE assigned Plaintiffs

---

[1] The Movant argues that Plaintiffs made statements in their original complaint that they did not make in their amended complaint. The facts in the amended complaint are not contradictory facts, but in fact revised to reflect more accurate information.  The Court should accept as true the material factual allegations contained in the <u>current</u> amended complaint pursuant to Rule 12(b)(6) and *Bell Atlantic Corp. v. Twombly,* 550 US 544, 556 (2007);  *Starr v. Baca* 652 F. 3d 1202, 1216 (2011).  Even if, however, this Court finds that the amended complaint is contradictory to previous complaints, "[t]he Ninth Circuit, and other courts . . .have held that nothing in the Federal Rules prevents a party from filing successive pleadings with inconsistent or even contradictory allegations. 'Unless there is a showing that the party acted in bad faith—a showing that can only be made after the party is given an opportunity to respond under the procedures of Rule 11—inconsistent allegations are simply not a basis for striking the pleading.' " *PAE Government Services, Inc. v. MPRI, Inc.*, 514 F3d 856, 860 (9th Cir. 2007).

PLAINTIFFS' OPPOSITION TO DEFENDANT CALIBER HOME LOANS, INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

Customer Assistance Specialist Ms. Lopez. (SAC, ¶26) Plaintiffs called Ms. Lopez regarding the status of their application, but Ms. Lopez did not return their calls. (SAC, ¶27)

On May 01, 2014, CALIBER began servicing Plaintiffs loan. On May 12, 2014, CALIBER sent a letter to Plaintiffs informing them that Mr. Edgar Correa had been assigned as their Single Point of Contact (SPOC). (SAC, ¶31) Under the California's Homeowner Bill of Rights (HBOR), a SPOC must be assigned to a borrower that has submitted a loan modification application. (SAC, ¶31) Thus, on information and belief, CALIBER was aware that Plaintiffs had a pending loan modification application with CHASE, which is why CALIBER assigned a SPOC to assist Plaintiffs with their modification application. (SAC, ¶31) As further evidence, Mr. Correa remained the SPOC throughout Plaintiffs' modification review with CALIBER. (SAC, ¶31)

On May 29, 2014, CALIBER recorded a Notice of Trustee Sale ("NOS") with a sale date of June 19, 2014.  This was recorded even though Plaintiffs had a pending, completed loan modification application with CHASE. (SAC, ¶32)  On May 31, 2014, Plaintiffs received a copy of the NOS. (SAC, ¶33) Plaintiffs attempted to contact their SPOC several times but were unable to get a hold of him. CALIBER repeatedly informed Plaintiffs that it was unaware that Plaintiffs had a pending loan modification application under review with CHASE. (SAC, ¶33, 35). During one of the calls, on June 2, 2014, CALIBER informed Plaintiffs that they qualified for a Making Homes Affordable Modification, which would be a 40-year loan beginning with a 2% interest rate. (SAC, ¶35). This modification would save Plaintiffs thousands of dollars yearly. During a phone call with CALIBER on June 3, 2014, CALIBER declined to obtain the loan modification documents from CHASE. CALIBER insisted that Plaintiffs reapply.  (SAC, ¶36)

On June 9, 2014, just ten days before Plaintiffs home was to be sold, Plaintiffs, who were in need of assistance, met with a non-profit representative who

-3-

1  conducted a conference call with CALIBER. (SAC, ¶38) During the call CALIBER

2  representative Torie stated that Plaintiffs had an open loan modification "workout"

3  with CHASE, which was in CALIBER's system. (SAC, ¶38) This is the first time

4  anyone acknowledged to Plaintiffs that CALIBER had their loan modification

5  application from CHASE. (SAC, ¶38) In response to this information, the non-profit

6  escalated Plaintiffs case to the Treasury Department office of "HAMP Escalations".

7  HAMP Escalations is a conduit between borrowers and servicers when borrowers

8  claim the servicers are not properly reviewing them for a HAMP loan modification.

9  (SAC, ¶38) The non-profit stated in its complaint to HAMP Escalation that

10  "borrower was in review for HAMP during the time of service transfer and new

11  servicer shows workout is open but continues with foreclosure sale 6/19/14.

12  Borrower seeks HAMP review for modification." (SAC, ¶38)

13  On or around June 10, 2014, Plaintiffs submitted a completed loan

14  modification application to CALIBER. (SAC, ¶39). Subsequently, on June 16, 2014,

15  the non-profit received notice from HAMP Escalations that based on the escalation

16  the foreclosure sale was postponed for a review. (SAC, ¶40)  On or around June 16,

17  2014, Plaintiffs received two letters from CALIBER.  (SAC, ¶41) The first confirmed

18  that "[a]dditional document(s) have been received and now your package is

19  considered complete and ready for the next stage review by our underwriting

20  team.(SAC, ¶41) We will review all documentation submitted to evaluate your

21  eligibility, and make a decision within 30 days of the date of this letter."  (SAC, ¶41)

22  The second from CALIBER stated that their loan modification was being reviewed

23  and that Plaintiffs' eligibility would be determined within 30 days.  (SAC, ¶41)

24  Shortly thereafter, Plaintiffs called CALIBER and spoke to representative

25  Oscar, who informed them that Defendant requires additional documents to process

26  the application for loan modification. Thus, Plaintiffs received contradictory

27  messages regarding whether or not their modification application was complete.

28  However, Plaintiffs submitted the additional documents. (SAC, ¶42)

-4-

On June 25, 2014, Plaintiffs spoke with CALIBER representative Gregory, who informed them that CALIBER's records showed Plaintiffs were in the process of a modification with CHASE. (SAC, ¶44). Subsequently, on or around July16, 2014, Plaintiffs received another letter from CALIBER that again confirmed that their new loan modification application was being reviewed and that Plaintiffs' eligibility would be determined within 30 days (presumably from this new date). (SAC, ¶45)

To date CALIBER has not made a decision regarding Plaintiffs' loan modification application. (SAC, ¶46)

## II.   STANDARD OF REVIEW

Motions to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure are viewed with disfavor and, accordingly, dismissals for failure to state a claim are "rarely granted." *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted).  In deciding a motion to dismiss, the court must accept as true the allegations of the complaint and draw reasonable inferences in favor of the plaintiff. *Doe v. United States,* 419 F.3d 1058, 1062 (9th Cir. 2005).  Inquiry into the adequacy of the evidence is improper. *Enesco Corp. v. Price/ Costco, Inc.,* 146 F.3d 1083, 1085 (9th Cir. 1998).  A court may not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

Plaintiffs submit that the motion to dismiss should be denied because the test is whether the facts, as alleged, support *any* valid claim entitling Plaintiffs to relief . . . not necessarily the one intended by Plaintiff.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*,  550 U.S. 544 (2007). The question presented by a motion to dismiss is not whether the Plaintiff will prevail in the action, but whether the Plaintiff is entitled to offer evidence in support of the claim. *Scheuer v.*

-5-

1  *Rhodes*, 416 U.S. 232,236 (1974) overruled on other grounds by *Davis v. Scheuer*,

2  468 U.S. 183 (1984).

3      *Iqbal* and *Twombly* prescribe a two-step process for evaluation of motions to

4  dismiss.  The court first identifies the non-conclusory factual allegations, and the

5  court then determines whether these allegations, taken as true and construed in the

6  light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief."

7  *Id.*; *Erickson v. Pardus*, 551 U.S. 89 (2007).

8      "Plausibility," as it is used in *Twombly* and *Iqbal*, does not refer to the

9  likelihood that a pleader will succeed in proving the allegations. Instead, it refers to

10 whether the non-conclusory factual allegations, when assumed to be true, "allow . . .

11 the court to draw the reasonable inference that the defendant is liable for the

12 misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.  "The plausibility standard is not

13 akin to a 'probability requirement,' but it asks for more than a sheer possibility that

14 a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 557).  A

15 complaint may fail to show a right to relief either by lacking a cognizable legal

16 theory or by lacking sufficient facts alleged under a cognizable legal theory.

17 *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

18  **A. UNDER *IQBAL* AND *TWOMBLY*, PLAINTIFFS HAVE STATED**

19  **SUFFICIENT FACTS TO SUPPORT EACH CAUSE OF ACTION**

20      The Plaintiffs have provided sufficient factual evidence to meet the

21 plausibility requirements of Iqbal and Twombly. The Defendant has not met its

22 burden to analyze the requirements of each claim and to show that even if the facts

23 were taken as true and in a light most favorable to Plaintiffs, the Plaintiff's could

24 not prevail. Rather, the Defendant has supported its motion to dismiss with various

25 misstatements of law, and accordingly, the motion should be DENIED.

26  **III.    LEGAL ARGUMENT**

27  **A. PLAINTIFFS ADEQUATELY PLED THEIR FIRST CLAIM FOR**

28  **RELIEF FOR VIOLATION OF CIVIL CODE §2923.6.**

-6-

The California Homeowner's Bill of Rights (HBOR) Civil Code section 2923.6 makes it illegal for a mortgage loan servicer to engage in dual tracking. Section 2923.6(c) addresses the problem of "dual tracking," in which financial institutions continue to pursue foreclosure even while evaluating a borrower's loan modification application. *Jolley v. CHASE Home Finance, LLC,* 213 Cal.App.4th 872, 904, 153 Cal.Rptr.3d 546 (2013).

Section 2923.6(c) provides in relevant part:

> If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent **shall not record** a notice of default or **notice of sale**, or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs:

> (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.

California Civil Code 2923.6, (emphasis added). Thus, "[s]ervicers may not move forward with foreclosure (which includes the filing of a Notice of Trustee Sale) while a borrower's complete, first lien loan modification is pending. *Shapiro v. Sage Point Lender Servs.*, 2014 WL 5419721 (C.D. Cal. Oct. 24, 2014).

In the present case, CHASE transferred the servicing of the Plaintiff's loan to CALIBER while Plaintiffs' first lien request for modification with CHASE was still pending. Defendant CALIBER violated Civil Code section 2923.6 *et seq.* when it filed the NOS while Plaintiffs loan modification was still pending with CHASE. In its order dated March 23, 2015, The Court found that the Plaintiffs did not provide sufficient evidence to show that CALIBER knew that Plaintiffs had a pending application for loan modification when it became Plaintiffs mortgage servicer.

The Plaintiffs note, however, that during the process of preparing the Second Amended Complaint, Plaintiffs discovered facts, which demonstrate that CALIBER

-7-

1   received the loan modification application from CHASE and <u>knew</u> of the pending

2   application before it filed the NOS. (SAC, ¶¶31, 38, 44)(emphasis added). Citing this

3   evidence, Plaintiffs argued in their second amended complaint that CALIBER was

4   prohibited from recording the Notice of Trustee's Sale. (MTD, ¶4:21-22). CALIBER

5   continues to dispute this argument despite the evidence submitted in its support.

6       Plaintiffs assert that CALIBER, when preparing its MTD for the First

7   Amended Complaint, and their MTD for the Second Amended Complaint, knew, or

8   should have known, that filing the NOS while an application for loan modification

9   was pending with CHASE is in violation of 2923.6.[2]

10       In its order dated March 23, 2015, the Court further found that Plaintiffs did

11   not provide sufficient evidence to show that CALIBER continued to foreclose on

12   Plaintiff's home while it simultaneously continued to consider Plaintiff's request for

13   a loan modification. CALIBER claims that after Plaintiffs submitted their loan

14   modification to CALIBER the NOS was "stayed and continues to be stayed." (MTD,

15   4:27-28) However, as Plaintiffs allege in their SAC, the foreclosure was not

16   postponed on CALIBER's initiative. Rather, the foreclosure was postponed because

17   HAMP Escalations, a part of the Treasury charged with preventing servicers from

18   violating HAMP regulations, determined that there was a pending application with

19   CHASE and that dual tracking had occurred (SAC, ¶40)

20       Plaintiffs assert that the evidence does not support a finding that CALIBER

21   made the determination to postpone the foreclosure on their own. In fact, it is

22   CALIBER pattern and practice to wrongfully inform borrowers who call requesting

23   assistance with their loan modification that there is not enough time to stop a

24   foreclosure. (FAC, ¶37). Homeowners are also informed that they have only 17

25

26

27   [2] However, Plaintiffs would like to point out to the Court, respectfully, that CALIBER's knowledge of
     the pending loan modification application was irrelevant. The code states it is the submission of the
     loan modification application that triggers dual tracking protections, not the servicer's knowledge of
28   the submission. Otherwise every servicer would claim ignorance and never be held liable for dual
     tracking, which would make the code meaningless.

-8-

PLAINTIFFS' OPPOSITION TO DEFENDANT CALIBER HOME LOANS, INC.'S MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

1  calendar days until the sale date and that the only way to save their home is to file

2  for bankruptcy.

3      Even if CALIBER stayed the foreclosure sale, such action does not cure a

4  violation of the regulations prohibiting dual tracking. The negative consequences of

5  dual tracking still existed for the Plaintiffs - the NOS is recorded on the property

6  thereby clouding their title and negatively impacting their credit score. CALIBER

7  charges the Plaintiffs fees every time the NOS, which should not have been issued

8  in this first plance, is postponed . If CALIBER wanted to cure the negative

9  consequences of dual tracking, or to attempt to return the Plaintiff's to a position

10 before dual tracking occurred, CALIBER should rescind the NOS. (*See Tamburri v.*

11 *Suntrust Mortg., Inc.*, 2013 WL 4528447 (N.D. Cal. Aug. 26, 2013)(the court granted

12 summary judgment in favor of the servicer that rescinded the Notice of Default.

13 *Jent v. N. Trust Corp.*, 2014 WL 172542 (E.D. Cal. Jan. 15, 2014) (Upon notice from

14 the borrower that the Notice of Defailt was recorded in error the servicer rescinded

15 the Notice of Default, thus there were no damages.) *Crane v. Wells Fargo,* 2014 WL

16 1285177 (N.D. Cal. Mar. 24, 2014) (Servicer rescinded the Notice of Default at issue

17 and there is no sale pending. Borrower then, has no available remedy and the court

18 dismissed her claim).

19     CALIBER violated the HBOR §2923.6. Therefore, the court should dismiss

20 CALIBER's Motion to Dismiss for this claim.

21

22     **B. PLAINTIFFS ADEQUATELY PLED THEIR SECOND CLAIM FOR**
       **RELIEF SINCE CALIBER HAS VIOLATED RESPA RULES AND**
       **PROCEDURES REGARDING EVALUATING PLAINTIFFS FOR**
23     **LOSS MITIGATION OPTIONS**

24

25         1. Under RESPA Caliber had Obligations to Evaluate Plaintiffs for Loss
             Mitigation Within 30 Days

26     On January 10, 2014 new regulations implementing RESPA, issued by the

27 Consumer Financial Protection Bureau ("CFPB"), went into effect concerning loss

28 mitigation procedures.  The loss mitigation regulation  mandates a procedural

-9-

framework within which the evaluation of loss mitigation options must take place. (Regulation X, 12 C.F.R. § 1024.41(a).  See Section-by-Section Analysis, § 1024.41, 78 Fed. Reg. 10,818 (Feb. 14, 2013)).  Section 1024.41(a) makes clear that RESPA's private remedies under 12 U.S.C. § 2605(f) are available to borrowers to enforce the procedural requirements in 12 C.F.R. § 1024.41.  Wenegieme v. Bayview Loan Servicing, 2015 WL 2151822 (S.D. N.Y. May 07, 2015) (finding that § 1024.41(a) allows a borrower to enforce § 1024.41(f)'s prohibition on dual tracking under 12 U.S.C. § 2605(f)); Houle v. Green Tree Servicing, 2015 WL 1867526, at *3 (E.D. Mich. Apr. 23, 2015) ("Borrowers have a private right of action against lenders who evaluate a loss mitigation application while at the same time pursuing foreclosure.")

The most significant protections under the rule are afforded to the borrower upon submission of a complete application.  (Reg. X, 12 C.F.R. § 1024.41(b)(1)). If the servicer determines that the loss mitigation application is complete, it must send the borrower a notice acknowledging that the application is complete within five business days of receipt of the application. (Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(B)). Further, the servicer's immediate responsibility upon receipt of a complete loss mitigation application is to evaluate it.  The evaluation of the borrower for all loss mitigation options must be completed within thirty days of receipt of a complete application.  (Reg. X, 12 C.F.R. § 1024.41(c)(1)(i)).(emphasis added)

In the present case, Caliber is liable for violating this section since Plaintiffs submitted a complete application for a loan modification to Caliber. Caliber acknowledged this application in a letter to Plaintiffs dated June 16, 2014, stating Caliber would make a decision within 30 days. (MTD, 6:1-2) Caliber required additional documents after June 16, 2014, which Plaintiffs provided. Caliber sent a second letter on July 16, 2014, confirming the application was complete. Thus, Caliber would have needed to evaluate the loan modification application within 30 days, on or before August 15, 2014. (MTD, 6:3-5) Caliber claims the filing of the

-10-

1   lawsuit on August 15, 2014, the last day Caliber had to evaluate Plaintiffs, was

2   preemptive and thus Caliber could not be held liable for violating RESPA since they

3   had not been given an opportunity to respond. (MTD, 6:4-8) Caliber does not cite to

4   any authority as to why the filing of the lawsuit on the very last day of the 30 day

5   window somehow thwarted Caliber's evaluation of Plaintiffs loan modification

6   application. Indeed, it is not even clear how their SPOC, located in Texas, would be

7   aware of a lawsuit being filed in San Francisco. What is clear is Caliber had an

8   obligation under RESPA to make a determination at any time within 30 days, and

9   nowhere in the rules does it state the filing of a lawsuit frees a servicer of its

10  obligations.  Thus, Caliber is in violation of Reg. X, 12 C.F.R. § 1024.41(c)(1)(i).

11        2.   Caliber has a Duty to Comply After the Loan was Transferred from
                 Chase.

12       In addition to any application submitted directly to Caliber by the Plaintiffs,

13  Caliber had a duty to comply with RESPA with respect to the loss mitigation

14  application they submitted to Chase. The requirements for responding to a loss

15  mitigation application continue to apply even after the servicing of the borrower's

16  loan has been transferred.  As a transferee servicer, CALIBER was required to

17  comply with the requirements of § 1024.41 regardless of whether a borrower

18  received an evaluation of a complete loss mitigation application from CHASE, the

19  transferor servicer. (See Official Bureau Interpretation, Supplement 1 to Part 1024,

20  ¶ 41(i)-1). Documents and information transferred from CHASE to CALIBER may

21  constitute a loss mitigation application and may require a CALIBER to comply with

22  the § 1024.41 loss mitigation requirements. Id.

23       In addition,  because the Plaintiffs were in process of having their application

24  evaluated when the servicing was transferred, CALIBER had a duty to obtain any

25  documents and information submitted by the Plaintiffs to the transferor servicer

26  CHASE in connection with their loss mitigation application and should "continue

27  the evaluation to the extent practicable."  (See Official Bureau Interpretation,

28  Supplement 1 to Part 1024, ¶ 41(i)-2)). See also Reg. X, 12 C.F.R. § 1024.38(b)(4)

PLAINTIFFS' OPPOSITION TO DEFENDANT CALIBER HOME LOANS, INC.'S MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

1    (effective Jan. 10, 2014)).

2         For purposes of the time deadlines and other requirements in §§1024.41(e)(1),

3    1024.41(f), 1024.41(g), and 1024.41(h), CALIBER was required to consider

4    documents and information received from CHASE that amount to a complete loss

5    mitigation application to have been received by CALIBER as of the date such

6    documents and information were provided to CHASE. Id. In other words, CALIBER

7    has to consider Plaintiffs in the same position as they were in with CHASE. Since

8    Plaintiffs were in the process of being reviewed for a loan modification with CHASE,

9    CALIBER has to honor that and cannot initiate foreclosure, which includes the

10   filing of a NOS.

11        3.   Caliber has Damaged Plaintiffs.

12        A plaintiff claiming a RESPA violation must allege not only a breach of a

13   duty required to be performed under RESPA, but must also show that the breach

14   caused him to suffer damages. Hutchinson v. Del. Sav. Bank FSB, 410 F. Supp. 2d

15   374, 383 (D.N.J. 2006) (citing 12 U.S.C. § 2605(f)(1)(A) ("Whoever fails to comply

16   with any provision of this section shall be liable to the borrower for each such

17   failure . . . [for] any actual damages to the borrower as a result of the failure . . . .

18   ")). Actual damages include a loss for time spent away from work while preparing

19   correspondence to the loan servicer. Cortez v. Keystone Bank, Inc., No. Civ.A.98-

20   2457, 2000 WL 536666, at *12 (E.D. Pa. May 2, 2000). Plaintiffs allege in their

21   complaint that they lost wages from taking time off of work to correspond with

22   CALIBER. (SAC, ¶86)

23        The Plaintiffs have also alleged that Caliber charged them fees for the filing

24   and postponing of the NOS.  Caliber was required by Reg. X, 12 C.F.R. §

25   1024.38(b)(4) to treat Plaintiff's loss mitigation application as complete when it

26   acquired the servicing rights to Plaintiffs' loan, and therefore was not permitted to

27   initiate foreclosure proceedings before an evaluation of the application.  (Reg. X, 12

28   C.F.R. § 1024.41(g); Official Bureau Interpretations to Reg. X, ¶ 41(i)-2).  If Caliber

-12-

had complied with these RESPA requirements, the Plaintiffs would not have been charged these fees.  Actual damages can include being charged additional interest, late fees, and foreclosure costs as a result of a servicer's RESPA violations.  Turner v. Ocwen Loan Servicing, LLC, 2014 WL 6886054 (S.D. Cal. Dec 03, 2014) (alleging overcharges and late fees resulting from misapplication of payments under forbearance agreement).Plaintiffs' also allege their credit was damaged. Plaintiffs concede that they were at fault for originally not making mortgage payments. However this fault ends as of February 26, 2014, the time when CHASE was obligated to evaluate Plaintiffs, and offer Plaintiffs a modification since Plaintiffs in fact were eligible for a loan modification, as demonstrated by CALIBER's statement. This sufficiently constitutes damages under RESPA. Rothman v. US Bank, 2014 WL 4966907 (N.D. Cal. Oct. 3, 2014). (Borrower alleged servicers refusal to provide accurate account information worsened his already damaged credit, which he acknowledged was originally damaged by his own default. Since injury to a credit score constitutes damages under RESPA, he adequately acknowledged damages.)

They have been damaged. The court should therefore find that Plaintiffs have stated a claim and that the motion to dismiss Plaintiff's RESPA claim should be denied.

**C. PLAINTIFFS HAVE ADEQUATELY PLED THAT CALIBER WAS NEGLIGENT IN THE SERVICING OF PLAINTIFFS' LOAN MODIFICATION.**

A negligence cause of action requires: 1. defendant's legal duty of care to plaintiffs; 2. breach of that duty by negligent act or omission; 3. injury proximately caused by breach of that duty; and 4. resulting compensable damages. *Id.*; *Valdez v. Taylor Auto. Co.* (1954) 129 Cal. App. 2d 810, 817.

    1.  Under California law, Caliber had a presumed duty of care to the Plaintiffs and no legally recognized exception applied.

The basic principle of tort liability is that a person is responsible for injuries as a result of their lack of care. The California Supreme Court held that "[w]hile the

-13-

question whether one owes a duty to another must be decided on a case-by-case basis, every case is governed by the rule of general application that all persons are required to use ordinary care to prevent others from being injured as the result of their conduct." *Weirum v. RKO General, Inc.*, 15 Cal. 3d 40, 46 (1975). This holding is consistent with section 1714 of the Civil Code, which provides: "[e]very one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person. . . ." Cal. Civ. Code § 1714. Section 1714 "does not distinguish among injuries to one's person, one's property or one's financial interests." *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 806 (1979). A lender owes a borrower a duty of care in negotiating or processing an application for loan modification. *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 2014 WL 3883282 at 10-13 (Aug. 7, 2014). The *Alvarez* opinion held that a servicer owes a duty to exercise reasonable care in the processing of a loan modification application *once a servicer agrees to consider a modification of borrowers' loans. (Italics added)*

In the present case CALIBER not only took over the servicing of the loan, but also took over the ownership of the loan. On April 25, 2014, Defendant CALIBER sent Plaintiffs a Notice of Sale of Ownership to LSF8 Master Participation Trust. (SAC, ¶28) CALIBER, as the owner of the loan, would benefit more from a foreclosure versus a loan modification. Thus, CALIBER's actions, or inactions, in issuing the NOS despite the existence of an existing application for loan modification can be explained by their incentives to foreclose.

CALIBER had the following duty of care: 1. Plaintiffs put CALIBER on notice several times that they had a pending loan modification with CHASE. CALIBER had a duty to get those documents from CHASE. CALIBER had a right to request supplemental documents but not to require a new loan modification application (SAC, ¶95); 2. Refrain from initiating foreclosing on the property, by filing a NOS, while Plaintiffs loan modification was pending (SAC, ¶95) 3. Rescind the NOS,

-14-

1    which was recorded unlawfully. (SAC, ¶95); and 4. Timely review Plaintiffs loan

2    modification application. (SAC, ¶97)

3        Defendant argues it is not liable for negligence, in part, because it did not

4    owe a duty of care to the Plaintiffs. First, Defendant argues "'[a]s a general rule, a

5    lender does not owe a borrower a duty of care when it engages in arm's length

6    transactions with borrowers." *See Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal.

7    App. 3d 1089, 1096 (1991); (MTD 6:2-5.) However, California law is now well-settled

8    against blind reliance on the general rule stated in *Nymark* to reject negligence

9    claims in the mortgage servicing context, particularly in light of the changing

10   relationship between modern mortgage servicers and their customers. *See Jolley,*

11   213 Cal. App. 4th at 903. The *Jolley* court cautioned that "courts should not rely

12   mechanically on the "general rule" that lenders owe no duty of care to their

13   borrowers." *Id.* ("*Nymark* does not support the sweeping conclusion that a lender

14   never owes a duty of care to a borrower. Rather, the *Nymark* court itself explained

15   that the question of whether a lender owes such a duty requires 'the balancing of

16   [the "*Biakanja* factors"].')

17       Further, in a recent Court of Appeal case, *Alvarez v. BAC Home Loans*

18   *Servicing*, 228 Cal. App. 4th 941 (2014), the court found that, though a servicer is

19   not obligated to initiate the modification process or to offer a modification, once it

20   agrees to engage in the process with the borrower it owes a duty of care not to

21   mishandle the application or negligently conduct the modification process. The

22   court discussed the *Lueras* case stating "[t]he opinion in *Lueras* cited numerous

23   federal district court opinions that conclude a lender owes no duty of care to a

24   borrower to modify a loan. (*Lueras v. BAC Home Loans Servicing, LP, supra,* 221

25   Cal.App.4th at pp. 64–65, 163 Cal.Rptr.3d 804.) The court also cited other district

26   court decisions recognizing that a lender does owe a borrower a duty of care in

27   negotiating or processing an application for a loan modification. (*Id.* at pp. 64–65,

28   163 Cal.Rptr.3d 804.)

-15-

1    The court in *Alvarez* found the decision in *Garcia v. Ocwen Loan Servicing,*

2    *LLC,* 2010 WL 1881098, (May 10, 2010), representative of those cases that have

3    found that the *Biakanja* factors weigh in favor of imposing a duty of care on a

4    lender that undertakes to review a loan for potential modification. The factors are:

5    [1] the extent to which the transaction was intended to affect the Plaintiffs, [2] the

6    foreseeability of harm to him, [3] the degree of certainty that the Plaintiffs suffered

7    injury, [4] the closeness of the connection between the defendant's conduct and the

8    injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the

9    policy of preventing future harm.

10       Applying the *Biakanja* factors to the present case:

11       i.    *The Extent to which the Transaction was Intended to Affect the*

12             *Plaintiffs:* Here, the acceptance of borrower's loan modification

13             applications and the agreement to process and consider those

14             applications was unquestionably intended to affect Plaintiffs. Indeed,

15             the central goal of a loan modification is to allow Plaintiffs to remain in

16             their home with an affordable mortgage payment. Thus, to the extent

17             that CHASE undertook an assessment of Plaintiffs' modification

18             applications, they did so for the benefit of Plaintiffs.

19       ii.   *Foreseeability of Harm to the Homeowner.* The harm that can come to

20             Plaintiffs from CALIBER's mishandling their loan modification

21             application is utterly predictable. *See Garcia*, 2010 WL 1881098, at *3

22             ("Although there was no guarantee the modification would be granted

23             had the loan been properly processed, the mishandling of the documents

24             deprived Plaintiff of the possibility of obtaining the requested relief.").

25             Even extended delay in processing Plaintiffs' application causes

26             predictable harm: added interest from falling further behind and

27             unnecessary default-related fees can eat up any remaining equity in

28             Plaintiffs' home, or make other means of avoiding foreclosure (such as

-16-

short sale or repayment through Chapter 13 bankruptcy) more difficult. Because CHASE, then CALIBER continues negative credit reporting even while they process modification applications, damage to credit during months of delay can make it harder for Plaintiffs to recover financially even if their mortgages are ultimately modified.

iii.  *The Degree of Certainty That the Plaintiff Suffered Injury.* The types of injury that Plaintiffs are suffering are predictable and easy to measure: potential foreclosure, accumulated interest and fees. *See Garcia*, 2010 WL 1881098, at *3.

iv.  *The Closeness of the Connection between the Defendant's Conduct and the Injury Suffered.* The connection in the modification context is close. Plaintiffs injury is strongly related to CALIBER's conduct "because, to the extent Plaintiff otherwise qualified and would have been granted a modification, Defendant's conduct … precluded the loan modification application from being timely processed." *Garcia*, 2010 WL 1881098, at *3. Even if Plaintiffs didn't qualify, they may be able to show they missed a different opportunity to save the home (for instance, through bankruptcy protection).

v.  *The Moral Blame Attached to the Defendant's Conduct.* Plaintiffs had no control over whether or not CHASE properly processed their loan modification. It is highly relevant that the borrowers' "ability to protect his own interests in the loan modification process [is] practically nil" and the bank holds "all the cards." *Alvarez*, 2014 WL 3883282, at *11 (quoting *Jolley*, 213 Cal. App. 4th at 900). Where a mortgage servicer fails to properly review a homeowner's request for assistance, as here, and that failure leads to predictable harm such as continued foreclosure activity and potential loss of the family home, the conduct is blameworthy.

-17-

*vi.*    *The Policy of Preventing Future Harm.* Here, there is a policy of preventing future harm, which applies to Plaintiffs even though they originally went behind on their mortgage payments. As the *Garcia* court found, recent state and federal legislation—including the Making Home Affordable Program and the new RESPA requirements—demonstrate a public policy of "preventing future harm to home loan borrowers" that favored allowing the claim to proceed. *Garcia*, 2010 WL 1881098, at *3. Further, as noted in *Jolley*, "the California Legislature has expressed a strong preference for fostering more cooperative relations between lenders and borrowers who are at risk of foreclosure, so that homes will not be lost." 213 Cal. App. 4th at 903. The California Homeowner Bill of Rights (HBOR), which became effective January 1, 2013, demonstrates "a rising trend to require lenders to deal reasonably with borrowers in default to try to effectuate a workable loan modification." *Alvarez*, 2014 WL 3883282, at *12; *Jolley*, 213 Cal. App. 4th at 903.

Thus, CALIBER owed a duty of care to Plainitffs.

2.  Caliber breached its duty to properly handle Plaintiffs loan modification.

CALIBER breached its duty by not timely processing Plaintiffs' completed modification application. (SAC, ¶98) CALIBER has mishandled Plaintiffs' documents by not timely making a determination as to whether or not plaintiffs qualified for a loan modification.

3.  The Plaintiffs suffered damages when Caliber failed to properly handle their application for loan modification.

The last element of negligence is damages. The court in *Alvarez* discussed damages and found allowed damages to be the damage to title, "deterrence from seeking other remedies to address their default and/or unaffordable mortgage payments, damage to their credit, additional income tax liability, costs and

-18-

expenses incurred to prevent or fight foreclosure, and other damages." *Alvarez, at p.* 948-949. In the present case, Plaintiffs damages are to their title and to their credit. The Plaintiffs also incurred additional income tax liability and the costs and expenses to prevent and fight the foreclosure.

On June 2, 2014, CALIBER informed Plaintiffs that they were eligible for a loan modification. If Plaintiffs had received a loan modification, such as the HAMP modification, they would have received an interest rate of 2%. Plaintiffs current interest rate is 6%, thus the modification would have reduced their payments by 1/3. This would save Plaintiffs thousands of dollars a year.

Further, when CALIBER began servicing the loan and filed the NOS it resulted in fees being charged to Plaintiff for recording the NOS, including CALIBER's attorney's fees. Every time CALIBER postpones the NOS they charge Plaintiffs more fees. In addition, Plaintiffs have lost wages from missing work while trying to stop the sale of their home. Thus, the court should find that Plaintiffs have stated a claim and that the motion to dismiss Plaintiff's negligence claim should be denied.

### D. MODERN MORTGAGE SERVICING OFFERS SUCH ADVANTAGES FOR THE SERVICER OVER THE HOMEOWNER THAT COURTS SHOULD FIND IN FAVOR OF IMPOSING TORT DUTIES ON SERVICERS

In determining that a duty of care exists in the processing of loan modifications, the *Alvarez* court considered the differences between modern mortgage servicing from tradition loan origination. *Alvarez*, 2014 WL 3883282 at *11. These differences weigh heavily in favor of imposing tort duties on servicers.

The differences include the fact that borrowers are captive, with no choice of servicer, little information, and virtually no bargaining power. Servicing rights are bought and sold without borrower input or approval. Borrowers cannot pick their servicers or fire them for poor performance. In the absence of any constraint, servicers may actually have incentives to misinform and under-inform borrowers.

-19-

Providing limited and low-quality information not only allows servicers to save money but increases the chances they will collect late fees and other penalties from confused borrowers. *See* Kurt Eggert, *Limiting Abuse and Opportunism by Mortgage Servicers*, 15 Hous. Pol'y Debate 753, 769-70 (2004) ("Unlike the traditional banking system, servicers operate in a transactional milieu that has been almost completely depersonalized."); *see also* Adam J. Levitin & Tara Twomey, *Mortgage Servicing*, 28 Yale J. on Reg. 1, 25-29 (2011) (discussing why servicers prefer highly automated default management). Servicers' dramatic failure to invest in personnel, infrastructure, and technology has lead to a focus on problems of "dual-tracking" and "single point of contact." *See, e.g.*, 2012 Real Estate Settlement Procedures Act (Regulation X) Mortgage Servicing Proposal, 77 Fed. Reg. 57200, 57200 (Sept. 17, 2012)

Homeowners facing foreclosure and applying for modification or other loss mitigation alternatives (like short sale) are absolutely dependent upon their mortgage servicers to process their requests in a timely, accurate fashion. Information asymmetry can be profound. During the modification process, the homeowner has to rely entirely on information from the servicer – both about whether the loan is likely to be modified, and on the status of the modification. In addition, the homeowner must often make life-changing decisions such as whether to file for bankruptcy, sell the home, or give up the home through foreclosure or deed in lieu of foreclosure. But servicers often fail to provide such necessary information. *See* Lydia Nussbaum, *ADR's Place in Foreclosure: Remedying the Flaws of a Securitized Housing Market*, 34 Cardozo L. Rev. 1889, 1901 (2013) (stating that the servicing industry is "notorious for its lack of customer service"); Christopher L. Peterson, *Predatory Structured Finance* 28 Cardozo L. Rev. 2185, 2265 (2007) ("Phone calls to the loan's servicer are frequently ignored, subject to excruciating delays, and typically can only reach unknowledgeable staff who themselves lack information on the larger business relationships."). The potential

PLAINTIFFS' OPPOSITION TO DEFENDANT CALIBER HOME LOANS, INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

1   harm to the homeowner flowing from this disparity in bargaining power is greatest

2   in the loan modification process, where a servicer's improper or erroneous denial of

3   loan modification can end in unnecessary foreclosure. Even delay can be harmful.

4   Over the course of the modification process, which can take months or even years,

5   the homeowner may be falling further and further behind on the mortgage or using

6   up savings to pay on a home that is no longer affordable.

7          These above issues are present in this case. Plaintiffs have no choice who

8   services the loan or owns the loan. Plaintiffs have repeatedly received incorrect

9   information regarding the status of their loan. Plaintiffs have complied with every

10  request from both CHASE and CALIBER. Despite their good faith efforts, and the

11  fact that they applied for a loan modification 1 year and five months ago, Plaintiffs

12  application has still not been evaluated. Plaintiffs are at the mercy of CALIBER,

13  and every month falling further behind on their payments, which in turn could

14  make them ineligible for a loan modification.

15  **E.  PLAINTIFFS HAVE ADEQUATELY PLED THEIR SIXTH CLAIM
16         FOR VIOLATION OF §17200.**

17         California's unfair competition statute prohibits "any unlawful, unfair or

18  fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200 (2009). Since

19  Section 17200 is written in the disjunctive, it prohibits three separate types of

20  unfair competition: (1) unlawful acts or practices, (2) unfair acts or practices, and (3)

21  fraudulent acts or practices. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel.*

22  *Co.*, (1999) 20 Cal. 4th 163, 180. By proscribing "unlawful" acts or practices,

23  "Section 17200 'borrows' violations of other laws and treats them as unlawful

24  practices independently actionable." *Id*. at 179-80. However, a practice is prohibited

25  as "unfair" or "deceptive" even if not "unlawful" and vice versa.'" *Id*. at 180 citing to

26  *Podolsky v. First Healthcare Corp.* (1996) 50 Cal.App.4th 632, 647.

27

28

-21-

1

### 1.   Plaintiffs Have Standing to Bring a Section 17200 Claim.

2

In order to have standing under the UCL, a plaintiff must show that he or

3

she has "suffered injury in fact and lost money or property as a result of the unfair

4

competition." Cal. Bus. & Prof. Code § 17204. This provision requires a plaintiff to

5

sufficiently allege: (1) he or she has "lost 'money or property" sufficient to constitute

6

an 'injury in fact' under Article III of the Constitution" and (2) there is a "causal

7

connection" between the defendant's alleged UCL violation and the plaintiff's injury

8

in fact. *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203-04 (9th Cir. 2010) (citations

9

omitted). Taking the allegations as true, Plaintiffs have lost money when CALIBER

10

violated CC §2923.6 for dual tracking when they recorded the NOS while Plaintiffs

11

loan modification application was still pending. (SAC, ¶110) Recording of the NOS,

12

and every postponement, costs money, in which Plaintiffs are liable to pay. Thus,

13

they have lost money. Further, CALIBER has sat on Plaintiffs loan modification

14

from July 16, 2014 and to date has not made a determination. CALIBER informed

15

Plaintiffs on June 2, 2014, that they qualified for a loan modification with an

16

interest rage of 2%, but it continued to charge the Plaintiffs their regular interest

17

rate of 6%, which is 1/3 higher than what they are eligible for. Thus, the Plaintiffs

18

have lost money. Plaintiffs are also being charged late fees, and there is a causal

19

connection to the lost money and CALIBER. With the increased late fees, and

20

Plaintiffs getting further behind on their payments, it is unclear if Plaintiffs will

21

now qualify for a loan modification. This could lead to lost property.

22

### 2.   Plaintiffs Can Demonstrate a Claim for Unlawful Business Practices.

23

Here, CALIBER has violated the unlawful prong based upon negligence. *See*,

24

*McGarvey v. JP Morgan CHASE Bank, N.A.*, 2013 WL 5597148, at *8-9 (E.D. Cal.

25

Oct. 11, 2013) (finding a viable negligence claim serves as a basis for "unlawful"

26

prong UCL claim).   CALIBER filed a NOS in violation of §2923.6. CALIBER

27

violated RESPA by not timely evaluating Plaintiffs for a loan modification.

28

CALIBER also violated ECOA based upon the same fact.

PLAINTIFFS' OPPOSITION TO DEFENDANT CALIBER HOME LOANS, INC.'S MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

3.   Plaintiffs Can Demonstrate a Claim for Unfair Business Practices.

When an action is brought by a consumer against the creditor, as is the case here, a broader definition of the word "unfair" applies than when an action is between direct competitors. In this context, an "unfair" business practice occurs "when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *See People v. Casa Blanca Convalescent Homes, Inc.*, (1984) 159 Cal. App. 4th 509, 530, abrogated on other grounds in Cel-Tech, 83 Cal. Rptr. 2d at 565 & n.12.

Here, CALIBER has violated the unlawful prong based on a violation of California Civil Code Section 2923.6, RESPA, ECOA and negligence. *See, e.g., Peterson v. Wells Fargo Bank*, N.A., 2014 WL 3418870, at *7 (N.D. Cal. July 11, 2014) (finding a viable UCL claim based on borrower's fraud claim); *McGarvey v. JP Morgan CHASE Bank, N.A.*, 2013 WL 5597148, at *8-9 (E.D. Cal. Oct. 11, 2013) (finding a viable negligence claim serves as a basis for "unlawful" prong UCL claim). CALIBER knew Plaintiffs were in review for a loan modification when CALIBER filed the NOS. In fact, CALIBER assigned a SPOC to Plaintiffs before they filed the NOS, and before Plaintiffs applied for a loan modification with CALIBER. However, CALIBER repeatedly told Plaintiffs that it was unaware of the pending application, which was later determined to be untrue. Then CALIBER insisted Plaintiffs apply for a loan modification with CALIBER. The only reason CALIBER did not move forward with foreclosure was the HAMP Escalations Department stopped them from doing so. Further, when Plaintiffs contacted CALIBER to stop the foreclosure CALIBER informed Plaintiffs that since the sale was within 17 days, the only thing the Plaintiffs could do is file for bankruptcy. This is not true. CALIBER actions were unfair and have harmed Plaintiffs. Therefore, CALIBER's Motion to Dismiss the claim for violation of §17200 should be dismissed.

1

2                                **IV. CONCLUSION**

3          Plaintiffs pled sufficient facts to support the elements of their claims to

4   entitle them to relief. For all of the foregoing reasons, Plaintiffs request that the

5   Court overrule Defendant's Motion to Dismiss and require that Defendant file its

6   answer.

7          In the alternative, if the Court finds that the complaint, in whole or in part,

8   does not state a cause of action, but there is a reasonable possibility that the defect

9   can be cured by amendment, leave to amend must be granted. Because Defendant

10  cites no authority to support its argument that leave to amend should be denied

11  under these circumstances, and because none of Plaintiffs' claims are fatally flawed

12  on the face of the pleadings, should the Court grant any portion of Defendant's

13  Motion to Dismiss, Plaintiffs request leave to amend the Complaint to correct any

14  defects found by the Court.

15                              TRN LAW ASSOCIATES

16

17  Dated: May 25, 2015          /S/ Tiffany R. Norman
                                 Tiffany R. Norman,
18                               Attorneys for Plaintiffs GILBERTO F.
                                 GUILLERMO And LILLIAN S. CORTES
19

20

21

22

23

24

25

26

27

28
                                        -24-

PLAINTIFFS' OPPOSITION TO DEFENDANT CALIBER HOME LOANS, INC.'S MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT